Morris v. The State.

## MORRIS vs. THE STATE.

1. Section 2355 of the Code does not deprive the court of the right to give explanatory charges after having given the charge asked in writing ; on the contrary, it is the duty of the court to simplify and explain the charge given, by such additional instructions as will prevent a misunderstanding or misapplication of it.
2. When an affirmative charge is given, which asserts a correct abstract proposition of law, it will be presumed, on error or appeal, to have been justified by the evidence, unless the proof is set out in the bill of exceptions.
3. When a party excepts to the refusal of the court to give a charge asked, he must set out in his bill of exceptions sufficient of the evidence to show that the charge was not abstract.

APPEAL from the Circuit Court of Covington. Tried before the Hon. NAT. COOK.

WATTS, JUDGE & JACKSON, for the appellant. P. T. SAYRE, for the Attorney General, contra.

CHILTON, C. J.—Thomas Morris, the prisoner, was indicted for an assault with intent to murder Matthias Brown;

pleaded not guilty, was tried, convicted, and sentenced to five years' imprisonment in the penitentiary.

It appears by the bill of exceptions, that two charges were asked in writing, one of which asserted, that if the defendant inflicted the wound and was not actuated by malice, but did it in the heat of passion, then, as it would not have been murder had Brown died, the prisoner could not have been guilty of an assault with intent to murder. The court gave this charge, with the qualification, that to excuse the prisoner on the ground of passion, there must have been reasonable cause for such passion. The court gave the charge as asked, but super-added an explanation or qualification, as to the reasonableness of the provocation. This is a compliance with section 2355 of the Code, which was not designed to deprive the court of the right to give explanatory charges, after giving the charge as prayed for. Indeed, it is the duty of the court to see to it that the jury are not misled by any charge which is given, but so to simplify and explain the charges which are given, by additional instructions, as to prevent misunderstanding or a misapplication of them.

None of the facts are set out in the bill of exceptions, and it is impossible for us to determine whether the explanation or qualification is correct or not. If the prisoner had seized a gun, and shot at Brown, evidently with intent to take his life, but missing of his aim had only wounded him, having used a deadly weapon, if death had ensued, the law would have implied the malice, and the onus of showing such provocation as would have reduced the killing to manslaughter would have been thrown upon the defendant. Assuming that such a weapon was used, for the sake of the argument in this case, and that the State had proved it, it would then have devolved upon the prisoner to show, if he sought to protect himself in consequence of excited passion, some reasonable ground or excuse for becoming excited. The provocation must be such as may reasonably be supposed to excite and throw the pris-oner off his guard,—as temporarily to dethrone his reason.— No one would contend, that for a trifling provocation the accused might seize a deadly weapon, and purposely take the life of the person giving the provocation with it, and throw himself upon the infir···ty of his nature to redu such killing

to manslaughter. Hence the books agree, that "no words of reproach, however grievous,—or indecent provoking actions, or gestures expressive of contempt or reproach, without assault upon the person, however irritating, are sufficient to free the party killing from the guilt of murder : certainly not, where he makes use of a deadly weapon, or otherwise manifests an intention to kill, or to do some great bodily harm."— 1 Russell on Crimes, 486; Archb. Cr. Pl. 226. The proof not being set out in the bill of exceptions, we must presume the facts justified the charge given by way of qualification. This is an answer, also, to the argument that the jury might have inferred from the charge that they could look alone to the proof made by the prisoner, to see whether there was reasonable cause or provocation for the act, and that they should disregard the proof made by the State which might conduce to show this. We cannot presume, in order to put the court in error, that the State made any such proof.

2. As to the charge refused, which asserted " that if the jury believed from the evidence that the witness Key swore falsely in any one material matter on the trial, they must set aside his testimony entirely" : We cannot say there is error, without assuming the existence of facts nowhere shown by the record ; and the rule is, to indulge no presumption adverse to the regularity of the proceedings in the primary court. For aught we can know, Key may have been the prisoner's witness. Again ; there may not have been the semblance of foundation furnished by the evidence, that he had sworn falsely in any particular. The party excepting to the refusal of the court to charge must set out sufficient of the facts, or of the proof in the cause, to show that the charge was not abstract. Where the court gives an affirmative charge, then we must presume there was evidence on which to base it; and if it be erroneous as an abstract proposition of law, we must reverse, unless it is clear from the record that no injury could possibly have resulted to the appellant.

There being no error in the affirmative charge in this case, and the charge refused being abstract so far as this record discloses, it remains but to affirm the judgment.

Judgment accordingly.