## AIKIN vs. THE STATE.

[INDICTMENT FOR MURDER.]

1. *Change of venue.*—The statute (Code, § 3610) authorizes a change of venue, in a criminal case, but once.

2. *Objections to venire.*—It is not a valid objection to a *venire*, that it states only the initial letters, instead of the full christian names of several of the jurors, when it is not shown that the prisoner was in any way deceived or misled by the list furnished him, or that said jurors were not as well known by their initials as by their full christian names ; nor will the *venire* be quashed, on the prisoner's application, on the ground that it does not state that the jurors " were summoned to try his case," when it appears that it was entitled " a list of the jury summoned for A," (stating the prisoner's surname,) and that the sheriff read the list over to him, and at the same time told him that it was a list of the jury summoned to try his case for the homicide with which he was charged.

3. *Relevancy of evidence showing prisoner's proximity to place of homicide.*—A letter having been found, on the day on which the homicide was committed, near the door of the house in which the deceased was killed, which purported to have been sent by the prisoner, and which was proved to have never been delivered to the person to whom it was addressed,—the State may prove, by the person who found the letter, that he showed it to the prisoner, and asked if he knew anything about it ; that the prisoner, who could neither read nor write, at first denied all knowledge of it, but, on being questioned a second time, said " that it looked like a note that was handed to him by L. P. to carry to his brother, I. P.," (mentioning the names of the person by whom the letter was written, and the person to whom it was addressed.)

4. *Admissibility of confessions.*—The prisoner's confessions, when shown to have been " freely and voluntarily made," are competent evidence against him.

5. *Sufficiency of indictment.*—Held, on the authority of *Noles'* case, 24 Ala. 672, that an indictment for murder, in the form prescribed by the Code, (p. 698,) was sufficiently certain and definite, and was not violative of any constitutional provision.

6. *Abstract charge.*—A charge which is based, partly or entirely, on a state of facts of which there does not appear to have been any evidence, is abstract, and should be refused for that reason.

FROM the Circuit Court of Autauga.

Tried before the Hon. PORTER KING.

THE prisoner in this case, James Aikin, was indicted in the circuit court of Lowndes county, at its fall term, 1858, for the murder of one Michael Hibbets. The indictment was in the form prescribed by the Code, and

contained two counts; the first charging that the prisoner "unlawfully, and with malice aforethought, killed Michael Hibbets, by striking him with a stick;" and the second, that the prisoner "unlawfully, and with malice aforethought, killed Michael Hibbets, by cutting him with a knife." The venue was changed, on the prisoner's application, to Autauga county, where the trial was had at the fall term, 1859. Before the trial commenced, the prisoner again asked for a change of venue, " on the ground that there was such an array of prejudice and public opinion against him in Autauga county, that it was impossible for him to have a fair and impartial trial, such as the constitution guaranties to every man." The court overruled the application, and the prisoner excepted.

" The prisoner then moved to quash the *venire* summoned for him, on the ground that it did not set out the christian names in full, but only the initials of twenty-three of said *venire ;* and that it did not state that they were summoned to try his case, but that they were 'summoned for Aikin.' On this motion, the State proved to the court, by the sheriff of the county, that when he served a list of the jury on the prisoner, he told him that it was a list of the jury summoned to try his case for the murder of Hibbets at the present term of the court, and at the same time read over the list to him." The *venire*, as copied into the bill of exceptions, was entitled, " A list of the jury summoned for Aikin." The court overruled the motion, and the prisoner excepted.

" In the progress of the trial, the State offered to prove, by one James D. McCall, that he found a note, or letter, on the day of the murder of Hibbets, near the premises of said Hibbets, and near the door of the house in which he was murdered; that he showed said note to the prisoner, and asked whether he knew anything about it; that the prisoner at first denied all knowledge of it, but, on being asked a second time, replied, that it looked like a note that was handed to him by one Lowndes Prewitt to carry to his brother, Iverson Prewitt, at Newport. It was shown, also, that the prisoner could neither read nor write; that Lowndes Prewitt, the writer of the note, then lived in

Hayneville ; that I. A. Prewitt, to whom it was addressed, lived at Newport ; that the note was in the hand-writing of said Lowndes Prewitt, who now lives in Texas ; that the note was addressed on the back, 'I. A. Prewitt, politeness of Mr. Aikin ;' and that when the prisoner was asked if he knew anything of said note, it was shown to him, and he looked at it before replying as above stated. The note was dated on the day when the prisoner was shown to have been in Hayneville, and when he left Hayneville to go to the neighborhood of Hibbet's residence, which was the day before Hibbets was murdered ; and it was proved by said I. A. Prewitt, to whom the note was addressed, that said note was never delivered to him by the prisoner, nor by any one else before it was found as above stated. The prisoner objected to the admission of what he said about the note, because it was not sufficiently identified as the note which Lowndes Prewitt had handed to him. The court overruled the objection, and the prisoner excepted.

"The prosecution offered to prove, by Fred. Tyler, a policeman of the city of Montgomery, that he arrested the prisoner at midnight ; that the prisoner was asleep when he arrested him ; that he took the prisoner by the arm, and told him he was his prisoner ; that the prisoner raised up on his bed, but he told him he would kill him if he moved ; that the prisoner said he would lie still, and he (witness) then tied his hands ; and that this was all that was said between them up to the time of the trial. The witness was then asked to state the prisoner's declarations ; to which the prisoner objected, on the ground that, before his declarations or confessions could be received, it must be shown that they were voluntarily made. The declarations made by the prisoner to said Tyler, which the court allowed to go to the jury, were proved to have been freely and voluntarily made, and were not made under the influence of any fear, threats, or promises whatever. The court overruled the objection, and the prisoner excepted.

"The State offered to prove, by one Dr. Bannister, confessions made by the prisoner while in jail in Lowndes

county. The prisoner offered evidence showing that said Bannister was at Lowndesboro on the day when the prisoner was brought there, after his arrest in Montgomery county ; that there was a mob raised to execute him, and said Bannister was there ; that one Hiram McLemore took a very active part in the proceedings of the mob, and conversed with the prisoner, but did not hear the conversation (?) One Hartwell also testified, that he was in Lowndesboro on the day when the prisoner was brought there ; that said McLemore took the prisoner, or went with him, to the back-yard of a stable in · Lowndesboro, and had a conversation with him ; that said McLemore took an active part in the proceedings of the mob, and that fact was known to the prisoner. The prisoner further proved, that said McLemore went to the jail of Lowndes county in company with said Bannister, on or about the 1st September, 1858 ; that the prisoner knew McLemore, and saw him at the jail in which he was confined on that day. The prisoner then moved to exclude from the jury the statements made by him to said Bannister, on the ground that they were not made voluntarily, because of the continuance of the fear that was excited by the mob at Lowndesboro, which was revived when McLemore, whom he knew as one of said mob, [came to the jail.] There was no evidence that the prisoner was under fear of the Lowndesboro mob, or of any other mob or person, while he was in the jail at Hayneville, or while he was confessing to said Bannister. It was in evidence before the confession was proved, and after, that the confession to said Bannister was freely and voluntarily made, and at the instance of the prisoner himself; that said McLemore was not present at the time of the confession ; and that said Bannister, at the meeting of the Lowndesboro mob, voted against hanging the prisoner without law, and was in favor of letting the law take its course with regard to him. The court overruled the motion, and the prisoner excepted.

" The prisoner proved by said Bannister, that while he was in the jail with him, and after he had made the statements testified to by said Bannister, he asked Bannister,

whether or not he was a lawyer; that Bannister stated that he was not, and then asked him where the balance of the money was; and that he made no reply, and made no other statements in reference to it. It was shown that Bannister was not an attorney-at-law, and made no pretense of acting as such for the prisoner at the time said confessions were made to him; that said confessions were not made under any impression or understanding on the part of the prisoner that Bannister was his attorney or counsel; that the prisoner was in an iron cage at the time, and, before making said confessions, requested Bannister to draw up his chair near to him, and then voluntarily confessed as aforesaid. The prisoner moved to exclude said statements or confessions from the jury, on the ground that they were made to said Bannister as an attorney. The court overruled the motion, and the prisoner excepted.

"The prisoner asked the court to instruct the jury, that they could not find him guilty of murder under the indictment on which he was tried, on the ground that said indictment was framed under the Code of Alabama, and that the act is unconstitutional; and on the further ground, that precedents should be followed unless flatly absurd or unjust, and that a precedent taking from the prisoner the right to be tried under a common-law indictment is absurd and unjust; and on the further ground, that the State constitution provides, that no man shall be tried for felony or otherwise infamous offense, unless by indictment or presentment by a grand jury, and that the indictment there referred to was a common-law indictment. The court refused this charge, and the prisoner excepted.

"The prisoner further asked the court to instruct the jury, that if they believed from the evidence that, from appearances in the house of the deceased, there was a difficulty between him and the prisoner, and that the difficulty originated about an account, and that the deceased was killed in said difficulty, then they could not find him guilty of murder. The court refused to give this charge, and the prisoner excepted."

Witcher & Keister, for the prisoner.

M. A. Baldwin, Attorney-General, *contra.*

R. W. WALKER, J.—1. In refusing to change the venue from Autauga county, the court simply followed the express direction of the Code, which provides that "the trial can be removed but once."—Code, § 3610.

2. The prisoner moved to quash the *venire* on two grounds : *first,* that it " did not set out the christian names in full, but only the initials, of twenty-three of said *venire;"* and *second,* because the *venire* " did not state that they were summoned to try his case, but that they were summoned for Aikin."

In reference to the first objection, it is plain, we think, that no *greater* certainty should be required in setting out the names of jurors summoned for the trial of a capital case, than is necessary in alleging the name of the accused in an indictment. Whether the *same* degree of certainty would be indispensable in both cases, we need not inquire. In regard to indictments the rule is well settled, that it is sufficient to describe the defendant by the name by which he is generally known. Hence, if a person is in the habit of using initials for his christian name, and is indicted by such initials instead of his full christian name, the indictment is, in this respect, sufficient.—Wharton, § § 237, 240, 251, 255–7 ; State v. Anderson, 3 Richardson, 172.

It was not shown, or alleged even, that the twenty-three jurors, whose initials simply are given, were not known by those initials; but the objection is, that the "christian names in full are not given." For aught that appears in this record, these twenty-three jurors may be as well known by the letters prefixed to their surnames in the *venire,* as by their full christian names. It was not pretended that the defendant had been in any way deceived or misled by the list which was furnished him. In the absence of any showing that such was the case, and of any proof that the jurors were not generally known by the names as given in the list, it is obvious that the mere failure to insert in the panel " their christian names in full" is not sufficient

ground for quashing the *venire.*—See State v. Anderson, 3 Rich. 172; Bill v. The State, 29 Ala. 38.

The bill of exceptions shows that, when the sheriff served the list upon the prisoner, he told the latter that it was "a list of the jury summoned to try his case for the murder of Hibbets at the present term of the court, and that he read said list over to the prisoner at the same time." This is a complete answer, if indeed any was needed, to the second objection made to the *venire.*

3. The conversation between the prisoner and McCall, in relation to the note found by McCall, was legal evidence. It tended to show that the defendant had been near the locality of the murder, about the time it was committed. The weight of the evidence was a question for the jury.

4. The bill of exceptions expressly states, that the confessions of the prisoner to Tyler and Bannister were "freely and voluntarily made." We see no shadow of legal objection to their admission as evidence.

5. The sufficiency of the indictment is expressly adjudged in Noles v. The State, 24 Ala. 672. Hence, the first charge asked was properly refused.

6. The second charge asked was based in part, if not altogether, on a state of facts of which there does not appear to have been any evidence whatever. It was, therefore, abstract, and there was no error in refusing it. Garrett v. Malone, 24 Ala. 376; Morris v. The State, 25 Ala. 57.

The judgment of the court below must be affirmed, and the sentence of the law must be executed, as ordered in the judgment of the circuit court.