BILL MILLER ET AL. (FREEDMEN) *vs.* THE STATE.

[INDICTMENT FOR GRAND LARCENY.]

1. *Admissibility of confessions.*—Before the confessions of the prisoner, in a criminal case, can go to the jury as evidence, they must be shown to the satisfaction of the court, on consideration of the prisoner's age, condition, situation, and character, and the attendant circumstances, *prima facie* to have been made voluntarily; and the admission of the confessions to the jury, without such preliminary proof to the court, is erroneous.

2. *Same.*—The mere fact that a confession is made in answer to a question which assumes the prisoner's guilt, does not, *per se*, render the confession inadmissible.

3. *Proof of ownership of stolen property.*—Where it was shown that the stolen property was taken from the possession of the person who was alleged in the indictment to be the owner, but the evidence was conflicting as to the character of his possession—some of the evidence tending to show that it belonged to him individually, while there was also evidence which tended to show that he had previously sold it to the Confederate States, and merely held possession as agent or bailee; and the defendant thereupon requested the court to instruct the jury, "that if they were in any doubt whether the property belonged to him or to the government, they must give the defendant the benefit of the doubt, and acquit him"; which charge the court refused to give, without the qualification, "that if he had possession of the property as agent or bailee, they should convict the defendant,"—*held*, that there was no error in the refusal of the charge as asked, nor in the qualification given.

4. *Abolition of slavery by act of war, and applicability of general criminal statutes to freedmen.*—Slavery was abolished in Alabama by the act of war, prior to the passage of the ordinance of the State convention on the 22d September, 1865; and for offenses committed by freedmen since the abolition of slavery, they may be indicted, convicted, and punished, under the general criminal statutes applicable to other persons.

5. *Punishment of grand larceny.*—The act approved December 15, 1865,

entitled " An act the more effectually to prevent the offenses of grand larceny, arson, and burglary," (Session Acts, 1865-6, p. 116,) applies only to offenses committed after its passage, and leaves the former laws in operation as to prior offenses.

FROM the Circuit Court of Sumter.
Tried before the Hon. JAMES COBBS.

THE indictment in this case, which was found at the October term, 1865, charged that " Bill Miller, Goodloe, and Patrick, negro freedmen, formerly slaves of William McRee, feloniously took and carried away three bales of cotton, the property of Stephen Horton, of the value of more than twenty dollars." The defendants were arraigned at the same term, and severally pleaded not guilty ; and on the trial at the April term, 1866, as the bill of exceptions shows, the following proceedings were had:

" The State introduced Stephen Horton as a witness, who testified that, in the early part of September, 1865, three bales of cotton were taken from his pick-room in said county, of the value of more than twenty dollars ; that he went to the prisoner Patrick, on the day after the abstraction of the cotton, and said to him, ' Patrick, you have been stealing my cotton ; and it is better for you to tell me all about it, or I will prosecute you for it.' Said witness testified, also, that he was a justice of the peace at that time, and Patrick knew that fact ; that Patrick then denied all knowledge of the cotton, and said that he did not take it ; that he immediately left Patrick, and, in a short time afterwards, found the cotton on the plantation of William McRee, for whom the prisoner was laboring ; that about an hour and a half after the finding of the cotton, he again went to Patrick, and said to him, 'Why did you not tell me about the cotton when I asked you before? Who was engaged with you in that matter, and what did you take it for?' Patrick replied, that when one had got into a scrape, he thought they had better keep out as long as they could ; and said, that they took the cotton to sell, to get some money, and that Bill Miller, Goodloe, and Jake were with him. Witness said, that he then went to each of these parties separately, and asked them, who was

engaged with them in taking the cotton, and what they took it for ; and that they replied, that each of the parties named was with them, and that they took it to sell to get some money.

"The foregoing being all the evidence of said witness on the subject of the confessions, the defendants each objected to allowing said confessions to go to the jury, on the ground that the same were not made freely and voluntarily, but were induced by the hope that it would be better to make them, and the fear of prosecution and punishment if not made. The court overruled these objections, and permitted said confessions to go to the jury; to which ruling of the court each of the prisoners excepted. The State then offered William McRee as a witness, who testified, that on the same day the cotton was found, but after said Horton had left, he asked the defendants, what they had told him ; and that they answered, that they had told him all about it, that they thought it best to make a clean breast of it, and that they thought Mr. Horton would be better satisfied if they did. The prisoners then again moved the court to exclude said confessions from the jury, on the same grounds as before; but the court overruled their objections, and permitted said confessions to go to the jury ; to which ruling of the court each of the prisoners then and there excepted.

"The witness Horton testified, that said cotton was his property, and had never been sold to the government. Other witnesses were introduced on the part of the defendants, whose testimony tended to show that said Horton had said that he had sold the cotton to the Confederate government; while other witnesses testified, that said cotton had been sold to an agent of the Confederate government, but had remained in said Horton's possession all the time until taken by the defendants, though it had been marked by an agent of the Confederate government. The defendants thereupon asked the court to give the following written charge : 'The jury must be satisfied of the truth of every material allegation of the indictment; and therefore, if, after weighing all the evidence, they are in any doubt, whether the cotton was the property of said Horton, or

belonged to the government, they must give [the defendants] the benefit of the doubt, and acquit.' The court refused to give this charge, except with this qualification—'but, if they believed from the evidence, beyond a reasonable doubt, that Horton had possession of the cotton as agent or bailee, in the county of Sumter, and before the finding of the indictment, the defendants should be convicted.' To this ruling of the court, and the refusal to give the charge as asked, the defendants excepted.

" It was in evidence, also, that the prisoners were formerly slaves of William McRee; and that the offense was committed, if at all, in the early part of September, 1865, and prior to the 21st day thereof. The prisoners thereupon asked the court to charge the jury, that if the offense was committed before 21st day of September, 1865, (the date of the ordinance abolishing slavery in Alabama,) the prisoners could not be legally convicted and punished under the indictment, and it was the duty of the jury to acquit them. The court refused to give this charge, or to discharge the prisoners; to which ruling and refusal of the court the prisoners excepted."

The jury returned a verdict of guilty, and the court thereupon sentenced the defendants to three years' imprisonment in the penitentiary.

A. A. COLEMAN, for the prisoners.—1. Section 3173 of the Code, under which the prisoners were convicted and sentenced, was not in force at the time of the trial, having been repealed by the act approved December 15, 1865, which changed the punishment of grand larceny; and the latter act contains no exception, or saving clause, as to prior offenses.—8 Porter, 434; 4 Ala. 487; 9 N. H. 59; 10 Watts, 351.

2. The confessions of the prisoners were not shown to have been made voluntarily. On the contrary, it was affirmatively shown that the confession of Patrick was made to a judicial officer, by whom inducements were held out to elicit the confession; and as to the others, although all that occurred at the time is not stated, it appears that the confessions were made in answer to questions which as-

4

sumed their guilt. The confessions ought not to have been allowed to go to the jury.—*Brister v. The State*, 26 Ala. 128 ; *Carroll v. The State*, 23 Ala. 38 ; 1 Greenl. Ev. § § 219, 220, 221, 222.

JNO. W. A. SANFORD, Attorney-General, *contra.*—1. The indictment is sufficient to sustain the conviction, whether Horton held possession of the cotton as his own property, or as the agent or bailee of the Confederate States.—*Davis v. The State*, 17 Ala. 415 ; *Rex v. Woodson*, 1 Leach, C. C. 356 ; *Rex v. Parker, ib.* 357 ; 2 East's P. C. 653.

2. The confessions of the prisoners were made after the cotton was found, and when a denial by them of the crime was deemed useless. At the time of the confession, no inducement was offered to elicit it. It was voluntary, and was, therefore, properly admitted by the court.—*Mose v. The State*, 36 Ala. 211 ; *Aaron v. The State*, 37 Ala. 106, and authorities there cited.

JUDGE, J.—The principal question to be determined in this case is, whether the confessions of the prisoners, as shown by the record, were properly admitted in evidence. The law is well settled, that before a confession can be admitted in evidence to the jury, it should be shown, *prima facie*, to have been voluntarily made. Whether it was so made or not, it is for the judge to determine, before he admits it, upon consideration of the age, condition, situation, and character of the prisoner, and the circumstances under which it was made.—*Brister et al. v. The State*, 26 Ala. 107. The usual method of showing that the confession was voluntary, is by negative answers to the questions, "whether the prisoner had been told that it would be better for him to confess, or worse for him if he did not confess ; or whether language to that effect had been addressed to him."—*Wyatt v. The State*, 25 Ala. 12, and authorities there cited ; also, 1 Phil. Ev. 542.

In the case before us, no such preliminary evidence was introduced. As to the prisoner Patrick, a threat was made to prosecute him, if he did not tell all about it. His subsequent confession was made, as it appears, in continua-

tion of the conversation, (which was resumed,) in which the threat was made ; and the threat may have induced the confession. As to the other prisoners, not only is there also absence of proof that their confessions severally were voluntary, but the record does not inform us that what the witness testifies to as having been said by him to them, which induced their confessions, *is all that he said ;* as to them, he may have resorted also to the appliance of hope or fear. We are prohibited from indulging the presumption that proper evidence was introduced to show that the confessions were voluntary, by the recital in the bill of exceptions that all the evidence of the witness on the subject of the confessions is set out therein.

As to the strictness of the rule, which excludes confessions, as being procured by hopes held out, or fears excited, see the following decisions of this court : *Aiken v. The State,* 35 Ala. 399 ; *Bob v. The State,* 32 Ala. 560 ; *Clarissa v. The State,* 11 Ala. 57 ; *Wyatt v. The State, supra; Brister et al. v. The State, supra ; Mose v. The State,* 36 Ala. 211 ; *Aaron v. The State,* 37 Ala. 106 ; *Franklin v. The State,* 28 Ala. 9 ; *Chambers v. The State,* 26 Ala. 59 ; *Frank v. The State,* 27 Ala. 37 ; *Spencer v. The State,* 17 Ala. 192.

2. A confession is not inadmissible, as is contended, because elicited in answer to a question which assumes the prisoner's guilt. The law seems to be well settled, that this, of itself, would not be sufficient to authorize the exclusion of the confession.—*Carroll v. The State,* 23 Ala. 28 ; 2 Leading Crim. Cases, 202, and authorities there cited.

3. There was no error in the refusal of the court to charge as requested, in respect of the title to the property alleged to have been stolen ; nor in the charge as given upon that question.

4. The court properly refused to give the charge, that the prisoners could not be found guilty, if the evidence showed the offense for which they were indicted was committed prior to the 21st of September, 1865. The record shows the alleged offense was committed after the occupation of this State by the United States forces, and after the issue of the provisional governor's proclamation, but prior to the ordinance of the State convention, by which slavery was

declared to be abolished.—*Smith v. The State*, at the last term.

5. The position taken in the argument at the bar, that the act of the 15th of December, 1865, (Acts 1865–'66, p. 116,) repealed the section of the Code under which the prisoners were sentenced, cannot be sustained.—See *Stephen Miles v. The State*, at the present term, in which this question is discussed, and decided adversely to the prisoners.

For the error in admitting the confessions of the prisoners in evidence, as shown by the record, the judgment is reversed, and the cause remanded; and the prisoners will remain in custody until discharged by due course of law.