# Young & Griffin *v.* The State.

*Indictment for Murder.*

1. *Foot prints near scene of the crime; when admissible.*—The character of foot prints leading to or from the place where the crime was committed, discovered when the crime was discovered, and their correspondence with the feet of the accused, or with shoes worn by him or found in his possession, are admissible in evidence for the purpose of identifying him as the guilty agent. Such correspondence is a matter of fact, to which any witness observing it can properly testify.

2. *Confessions; when inadmissible.*—Two prisoners who had been

[Young v. The State.]

committed to jail on a charge of murder, then recently perpetrated, were taken in a few days after their commitment, without legal authority, by a body of forty unarmed men; and handcuffed, chained together, and guarded, they were carried seven miles into the country to a church near the scene of the murder, before arriving at which place, the crowd had increased to seventy-five. These men had obtained the keys of the jail from the sheriff on the assurance, that they would restore to him the prisoners unharmed, accompanied with a threat that they would have the prisoners even if he did not let them have the keys, and their purpose in taking the prisoners, as stated by them to the sheriff, was to find some money alleged to have been taken at the time of the commission of the offense; but it was not shown, that the prisoners were informed of the assurance given the sheriff, or of the crowd's avowed purpose in taking them from jail. About ten minutes after arriving at the church, one of the prisoners, without any solicitation, so far as shown, asked permission to have a "friendly" talk with one of the crowd, whom the prisoner designated by name, and the privilege having been granted by the leader, the prisoner, the party selected by him and another of the original forty men went a short distance in the woods, and there the prisoner admitted that he assisted in killing the deceased; and afterwards the other prisoner "also confessed under similar circumstances." While going from the jail to the church silence towards the prisoners was enjoined in their presence and afterwards observed. The prisoners at no time gave the slightest exhibition or evidence of apprehension or fright, and it was shown that no threats in words or otherwise than as above stated, were made, or any inducement offered to the prisoners, to obtain their confessions. *Held*, that the prisoners' confessions are not shown to have been uninfluenced by their surroundings, suspicious and meanacing in their character, as they were, and are therefore not shown to have been voluntary, and were not admissible in evidence. (BRICK-ELL, C. J., *dissenting*.)

3. *Confessions; to what facts the jury may look in determining their credibility.*—In the consideration and determination of the credibility of confessions, or the effect or weight to which they are entitled as evidence, the jury must look to all the facts and circumstances under which the confessions were made,—those which were introduced before the court, if shown to them, as well as any others that may be in evidence.

4. *Confessions; province of the jury in reference to.*—If, in view of all the evidence, the jury are not satisfied, that a confession was made freely, voluntarily and intelligently, or if it is not harmonious and consistent with the other evidence, it should be rejected as wanting in credibility, or as not entitled to weight in determining the question of guilt or innocence. But although the jury may believe that a confession was involuntary, yet, if it is corroborated by, or harmonious and consistent with, the other evidence, or if of its truth they have no reasonable doubt, the confession should be accepted and acted upon by them.

5. *Corpus delicti being proved, a conviction is authorized by an extra-judicial confession.*—Where the *corpus delicti* is proved independent of the prisoner's confession, an extra-judicial confession establishing his criminal agency, if believed by the jury, will authorize a conviction.


APPEAL from Chambers Circuit Court.

Tried before Hon. JAMES E. COBB.

At the Spring Term, 1882, of said court, the appellants, Charles Griffin and Robert Young, were indicted for the murder of William McCan, and at the same term they were tried, convicted of murder in the first degree, and, in accord-

[Young v. The State.]

ance with the verdict of the jury, were sentenced to suffer death. On the trial it was conceded, that William McCan had been killed on the night of November 30th, 1881, and there was evidence tending to show, that the defendants in the lower court were the parties who perpetrated the deed, and that their purpose in so doing was to obtain money. A part of the evidence tending to show that the defendants were the guilty agents, consisted of two sets of foot-prints or tracks, which were discovered near the scene of the crime, when the crime was discovered, and which led in the direction of the respective homes of the defendants. The State proved, against the defendants' objection, that shoes belonging to the defendants were found in their possession, which, when applied to the tracks, fit and corresponded to them, and the defendants duly excepted. The other evidence introduced on the trial, as shown by the bill of exceptions, tended to show the following facts: The defendant Griffin was arrested on the Thursday following the night of the killing, and, after a preliminary trial, was on the next day committed to jail; and the defendant Young was arrested on the following Saturday, and on the same day, after a preliminary examination, was committed to jail, both being charged with the murder of the deceased. While on his way to jail Griffin confessed his guilt, and on Saturday, while being carried to the preliminary trial of Young, he carried parties to a place where he had concealed money which he had taken, got the money and delivered it up. The defendants had ample opportunities of becoming acquainted with the details attending the commission of the crime so far as described by the witnesses on the preliminary trials, or by others in conversations in their hearing. About that time there was much excitement in the community, and the killing was the absorbing topic of conversation. On the next Monday after the defendants were committed to jail, a body of men collected at a point out in the country about seven miles, near the place of the killing, to prosecute a search for other evidence, and they sent a deputation of six men to LaFayette, where the jail was located, in which the defendants were confined, for the defendants for the purpose, as they stated to the sheriff, of a further examination to find the place where other moneys alleged to have been taken when the crime was committed, had been secreted. The sheriff refused to let them have the defendants, whereupon one of them told him that they would come and take them. On the following day a band of forty men on horseback rode into LaFayette and "parlied with the sheriff" at a public place in the town, in full view of the windows to the cell in which the defend-

ants were confined, and demanded the keys of the jail. On the refusal of the sheriff to give them the keys, they told him, that they would have the defendants any how. "There was much commotion in town as they rode in, the universal impression, at first, being that a mob had come to lynch the prisoners, but this apprehension was soon dispelled, when it was seen who the men were. Under legal advice and under the assurance from the captain of the forty men, that no violence was intended, and that he would see them returned," the sheriff obtained the keys, and with about a dozen of the forty men, went to the prisoners' cell, and the door thereto was unlocked by the consent and under the direction of the sheriff. These men filed the chains confining the defendants, there being no other way of conveniently releasing them, "one man having a sledge hammer, gotton to be used, if necessary, in breaking the chains from the floor of the jail, and they took said prisoners handcuffed and chained around the neck together, and after appointing twelve of the forty men to guard and protect the prisoners, marched them through the town, (one drunken man, who came with the forty men, asking, as they passed through town, 'where is Bob', referring to defendant Young, and started towards him, but was pushed back), and out seven miles in the country to a country church near McCan's grocery, where were assembled, together with the forty, about seventy-five men. There was no evidence of any threats of words, or otherwise than as herein stated, or inducement of hope offered the prisoners along the march. Some men were talking in a quiet, friendly manner to the prisoners, when the captain told them to say nothing to them now." The leader was "a man of recognized prudence and responsibility," with whom the prisoners were well acquainted. "The prisoners at no time gave the slightest exhibition or evidence of apprehension or fright." Nothing was in evidence as to what was said to the prisoners while in charge of the forty men, prior to the confession hereinafter set forth. These men were white, entirely unarmed and were riding, and the defendants were negroes and were walking. "Within ten minutes after reaching the country church and after a guard had been placed around the prisoners, Robert Young asked permission to talk friendly with a Mr. Wise, one of the forty men. The privilige was granted by the captain. The said Young, and Wise and a Mr. Dean, also one of the forty, repaired a little piece off into the woods, and Young then and there admitted that he assisted in killing the deceased." The parties to whom this confession was made testified, that they made neither threats nor promises, nor held out any inducement whatever to ob-

[Young v. The State.]

tain the confession, and knew of none having been made or offered by others. "The defendant, Charles Griffin, also confessed under similar circumstances."

The foregoing evidence "was in the presence of the jury and court," and thereupon the State offered the confessions in evidence, and the defendants separately objected, each to the confession alleged to have been made by him, on the ground that the confessions were not voluntary, but constrained by the circumstances surrounding the defendants when they were made. The court overruled their objections and they separately excepted, and the confessions were allowed to go to the jury as evidence. The same evidence was also introduced before the jury.

In the general charge the court instructed the jury, among other things, in substance, that the confessions by the defendants were competent evidence and, as such, were allowed to go to them for their consideration, and that they must consider them, along with the other evidence in the case, in making up their verdict; that the confessions were admitted in evidence by the court as voluntarily made, and the jury could only judge of their credibility by evidence other than such as had been introduced for the purpose of showing that they were not voluntary. To the giving of this charge the defendant excepted. The defendant then asked the court in writing to give the following charges: 1. "The mere fact that a prisoner has made a confession, is not sufficient to authorize a conviction." 2. "If a prisoner made what is called a false confession, and gave information of facts only which had been detailed by others, and which he had opportunity of learning from others, by hearing them detailed on preliminary examination, or elsewhere, the jury may look to this fact in determining whether the confession was made to prevent bodily harm." 3. "If the jury find that the defendants were taken from jail on the Tuesday after their commitment, by about forty men, and were carried into the country, and that such carrying was such a circumstance as induced them, or either of them, to confess, then they can look to that fact in deciding the credibility of said confession." 4. "In deciding on the credibility of the defendant Young's confession, the jury may look to the fact, if it be a fact, that the defendants were taken out of jail on Tuesday after their commitment, by a band of forty horsemen, or men riding, and carried a number of miles before any confession was had from said Young." 5. "If the jury believe that the defendant, Young, was induced to confess by fears or hopes, on account of being taken by a large body of men from the jail and carried into the country unlawfully, they must look to

that fact in deciding the credibility of such confession."
6. " The jury may look to the fact of the taking of defendants
from jail by a large body of men, after their commitment,
and of carrying them seven miles into the country, which is
in evidence, and the manner of so taking them, in deciding
as to the credibility of said confessions." The court refused
to give these charges and the defendants, each for himself,
separately excepted.

Wm. J. Samford and H. C. Lindsey for appellant. (No
brief came to hands of reporter.)

H. C. Tompkins, Attorney-General, for the State.—(1). The
objection to the testimony that the shoe fitted the track, was
properly overruled. Whether or not it did so fit was a fact
—not an opinion—derived from observation.— *Campbell
v. The State*, 23 Ala. 44; *Lewis v. The State*, 49 Ala. 1.
(2). The only circumstance tending to establish fear on the
part of defendants was the fact that a body of men took them
out of jail to some point several miles away. Not a single
promise was made, or threat given, nor was anything done
which would induce them to believe that a confession was
desired by the mob. On the contrary, the evidence showed
that during the trip the conversation between the men and
the defendants was friendly, and that the proposition to con-
fess came unsought from the defendants. This court will
view the conclusions of the lower court, in determining the
admissibility of confessions, as they would the findings of the
jury on the facts, and must be satisfied that the confessions
were induced by promises or extorted by threats or fear.
*Grant v. The State*, 55 Ala. 201 ; *Bonner v. The State*, 55 Ala.
246 ; *Redd v. The State, ante*, p. 492 ; Whart. on Crim. Evi-
dence, § 673 ; 2 B. & H. Leading Crim. Cases, 182–191.
(3). The facts upon which the charges as to the credibility of
the confessions are based, go to the admissibility of such
confessions, and were for the court and not the jury.—Whar.
Crim. Evidence, 627.

BRICKELL, C. J.—Traces, or marks, at or near the scene
of the crime, indicative of the presence or proximity of the
accused, at or about the time of its commission, are admis-
sible as facts, having a tendency to connect him with the
crime. Burrill on Cir. Ev. 263. Such traces may be, or
often are supposed to be derived from impressions of the per-
son of the accused, or from instruments or objects identified
as belonging to him or from fragments or portions of objects
there found, corresponding with other portions found or

[Young v. The State.]

known to have been in his possession. Burrill on Cir. Ev. 263–73. The character of foot prints leading to or from the place of the crime, discovered when the crime is discovered, and their correspondence with the feet of the accused, or with shoes worn by him, or found in his possession, are received in evidence to identify him as the guilty party or agent. Whart. Cr. Ev. § 796; Burrell Cir. Ev. 264 ; *Campbell v. State*, 23 Ala. 44. The precise point of the objection to the evidence in reference to the footprints seems to have been, that the witness applying the shoes to the tracks could not state the fact of correspondence ; that, it is said, was mere matter of judgment or opinion. The correspondence was matter of fact only, to which any witness observing it, could properly testify.—*Commonwealth v. Pope*, 103 Mass. 440.

The rule regulating the admissibility of evidence of confessions made by a party accused of crime, is simple and well defined ; yet, in its application to the varying circumstances of particular cases, there is a great diversity of opinion. As the rule has been most often stated in our decisions, it is a condition precedent to the admissibility of the confession, that it must be shown *prima facie* to have been made voluntarily—that is, made without the appliances of hope or fear, without extraneous pressure in either direction from other persons.— *Wyatt v. State*, 25 Ala. 12 ; *Brister v. State*, 26 Ala. 107 : *Mose v. State*, 36 Ala. 211 ; *Aaron v. State*, 37 Ala. 106 ; *Bonner v. State*, 55 Ala. 242 : *Miller v. State*, 40 Ala. 54. Whether the confession was made voluntarily, and is, of consequence, admissible, it lies in the province of the court to determine ; and in determining the question, regard must be had to the age, the intelligence, character, situation, and condition of the accused, and to the circumstances attending him when it was made·— *Johnson v. State*, 59 Ala. 37. The special circumstances of the particular case afford the better test in determining whether the confession was spontaneous, or whether it sprung from hopes excited, or fears alarmed by the words or acts of others.

It is not insisted that there were any promises or persuasions, direct or indirect, employed to induce the accused to make the confessions given in evidence ; nor that threats in words were uttered to extort them. The proposition is, that the situation in which the accused were placed, having been unlawfully committed to the custody of a large body of men, who without informing them of their purposes, taking them from jail, carried them near to the scene of the murder, the circumstances of themselves were threatening, having an immediate tendency to excite the fears of the accused, importing more imminent peril to their lives, than would the hard-

est, most hostile threats, expressed in words. It is but seldom that confessions are not made in the presence of threatening circumstances, or under the pressure of calamity, and it is because they are so made, when, for ease or freedom, the man is so easily seduced, as different agitations may prevail, to speak falsehood or truth, that the law presumes against the admissibility of his confessions—presumes that they are not a basis upon which a jury can safely render a verdict. But it is not because the circumstances are threatening, or because calamity is pressing, that confessions can be excluded. The pressure of the circumstances must be employed to excite hope or to alarm fear, before it can be said that the confession, made while they exist, is involuntary.—*Cody v. State*, 44 Miss. 337 ; *Rice v. State*, 47 Ala. 38 ; *Aikin v. State*, 35 Ala. 399 ; *Mose v. State*, 36 Ala. 211. The existence of such circumstances, when they have not been employed to induce or to extort the confession, affects its credibility, not its admissibility.

The taking of the prisoners from the jail was unlawful, but it was not for the purpose of doing them bodily harm, nor for the express purpose of obtaining confessions from them. There were no promises made, nor persuasions resorted to, nor threats uttered, which were calculated to induce them to speak of their connection with the murder. Excepting the taking them from jail and carrying them to the vicinity in which the murder was committed, there was nothing said or done to alarm their fears. So far as it is possible for us to know the state of their minds, they had not hope of advantage or benefit from confessing, or fear of present, impending peril, if they remained silent. They manifested no want of self-possession, and of their own volition, without solicitation, proposed a private interview with persons known to them, and of their own selection. The interview was had, apart from the company which had collected, and the confessions were made. In the presence of such evidence of spontaneity, and in the absence of all evidence of extraneous pressure, the confessions could not properly have been excluded from the consideration of the jury. Confessions can not be excluded from the consideration and scrutiny of the jury, unless it appears they were induced by the hope of temporal benefit, or extorted by the fear of personal injury, excited in the mind of the accused by some one who had, or may be reasonably and fairly supposed to have had, some power or authority to secure to him the promised good, or to avert the threatened evil.—*State v. Grant*, 22 Me. 171; *Commonwealth v. Morey*, 1 Gray 461. The threat or inducement must have had reference to the ease or freedom of the accused, or to the avoidance of the appre-

[Young v. The State.]

hended peril, and must be such as would lead him to acknowl-
edge guilt of an offense he never committed:—2 Lead. Cr.
Cas. 188.    Then they are excluded, not because of the wrong
done the accused, but because he may have been induced by
the pressure of hope or fear, to admit facts unfavorable to
him, without regard to their truth, in order to obtain the
promised relief, or to avoid the threatened danger.    The cir-
cumstances in which the accused were placed, may have im-
ported present danger, but there was no promise or assurance
given them that they would escape it by confessing the crime.
There was no reason for the confession, other than such as
may have sprung from their own reflections, their own hopes
and fears, in view of these circumstances.    It is not protection
from these, but protection against the influence of hopes or
fears excited by the promises or threats of others, the law
affords.

When confessions are admitted by the court, the jury must
receive them as competent evidence.    It is without their pro-
vince to reject them as incompetent.    But the credibility of
the confessions, or the effect or weight to which they are en-
titled as evidence, it is the province of the jury to determine.
In the consideration and determination of these inquiries,
they must look to all the facts and circumstances under which
the confessions were made—the facts and circumstances
which were introduced before the court, if shown to them,
and any other facts or circumstances which may be in evi-
dence.—*State v. Guild*, 5 Halsted 174;  *Brister v. State*, 26 Ala.
107;  *Bob v. State*, 32 Ala. 560; *Redd v. State*, ante p. 492.    Any
act, declaration or admission, received as evidence, the jury
should take and consider in connection with the circumstances
under which it was done or made.    If, in view of all the cir-
cumstances, the jury are not satisfied that the confessions
were made freely, voluntarily, and intelligently; if they be-
lieve that they originated from fear of present peril, or hopes
of personal benefit, excited by others, supposed—fairly and
reasonably supposed—to have the authority to assure the
benefit, or to avert the danger; or the confessions are not
harmonious and consistent with the other evidence, they
should reject them as wanting in credibility, or as not en-
titled to weight in passing upon the question of guilt or inno-
cence.    But although they may regard the confessions as
springing from the hopes or fears of the accused unduly ex-
cited, yet, if there is evidence corroborating them, or if they
are harmonious and consistent with the other evidence, if of
their truth they have no reasonable doubt, the confession
should be accepted and acted upon by them.—*Brister v.
State*, 26 Ala. 107.    Voluntary confessions may be untrue; the

[Young v. The State.]

jury are not bound to accept them as conclusive and indisputable. It is only by a comparison of them with any evidence inconsistent with them, that the jury can determine their truth or falsity. Involuntary confessions may be true, and their truth satisfactorily appears, when they are in harmony and consistency with all the other evidence in the cause.

The instruction given by the circuit court, that the jury were confined, in passing upon the credibility of the confessions, to other evidence than such as had been introduced before the court to show that they were involuntary, was erroneous. The same facts and circumstances which were shown to the court, when the court was called to pass upon the admissibility of the confessions, were shown to the jury. These facts and circumstances it was the duty of the jury to consider in passing upon the credibility of the confessions. If in view of these circumstances, the jury were satisfied, the confessions were constrained by promises or threats; that they were not made freely, voluntarily, intelligently, they were not bound to accept them as voluntary confessions. They were bound only to accept them as *competent, admissible* evidence, ascertaining their credibility, the effect or weight to which they were entitled, as they ascertained the credibility or effect of any other evidence, introduced for their consideration.—*Brister v. State*, 26 Ala. 107; *Guild v. State*, 5 Halstead, 174; *Mathews v. State*, 55 Ala. 65. The province and duty of the court and of the jury are essentially separate and distinct, and neither can assume the duty or invade the province of the other. The court adjudged the confessions were *prima facie* voluntary, and therefore competent and admissible evidence. As competent and admissible evidence the jury were bound to receive them. As incompetent and inadmissible the jury could not reject them. But if the jury were satisfied the confessions were not made voluntarily, that affected their credibility, and in determining the effect to which they were entitled, it was proper for them to consider whether they were involuntary. For like reasons the court erred in refusing the third, fourth, fifth and sixth instructions requested.

There was no error in the refusal of the first instruction requested. When, as in the present case, there is full evidence of the *corpus delicti*, independent of the confession of the prisoner, a confession of his criminal agency, if believed by the jury, will authorize a conviction.—*Mathews v. State*, 55 Ala. 187. The second instruction requested would have been proper, perhaps, if it had been stated, that in passing upon the credibility of the confessions, the jury could look to the

[Young v. The State.]

fact, that the prisoners had the opportunity of learning the facts related by them from the statements of others. But that they had such opportunity, of itself, does not tend to show that the confessions were not made freely and voluntarily.

For the errors noticed, the judgment must be reversed and the cause remanded. The prisoners will remain in custody until discharged by due course of law.

STONE, J.—On all the questions save one, the entire court concur in the views expressed by our brother, the Chief Justice. The excepted question is that which relates to the confessions of the prisoners, made when taken out of the prison.

During the entire history of this court the rulings have been uniform, that before confessions can be received in evidence against any one charged with crime, it must be proven to the court that they were made voluntarily. *Prima facie* they are inadmissible, and the *onus* is on the prosecution to prove they were voluntary. This is a condition precedent to their admissibility.—Clark's Man. § 2480 ; *Porter v. State*, 55 Ala. 95 ; *Redd v. State, ante* p. 492 ; *Murphy v. The State*, 63 Ala. 1. Voluntary is a strong adjective. In the sense here used, it means the free act of the mind, not influenced in the slightest degree by the appliances of hope or fear. Less than this is not voluntary.

In the present case, the testimony shows that no word of inducement, or word calculated to inspire fear, was uttered in the hearing of the accused. But there is another phase of this question. The prisoners were taken from the jail without a semblance of legal authority by a body of forty men acting outside of the law. If they were not taken from the jail by physical force, the sheriff was at least induced to surrender the keys of the prison under a threat that, if he did not, they would have the prisoners any how. The prisoners were then carried seven miles into the country, chained and guarded, to a point near the scene of the murder, where the forty men had increased by additions up to seventy-five. Here the confessions were made. It is said these men were unarmed, and that they had pledged their word to the sheriff that the prisoners should be restored to him unharmed. There is no testimony that the prisoners were informed of the giving of this pledge. It is said silence was enjoined and observed towards the prisoners. Silence begets mystery, and often generates fear. It is common knowledge that mobs take the law into their own hands by just such methods as these, and we must suppose these prisoners shared in that knowledge. Acts may be, and frequently are as menacing as

[Marler v. The State.]

words can be made. If these forty men, or the accredited leaders of them, had assured the prisoners, and convinced them, that no harm was intended them, then a confession freely made after such re-assurance would appear to be voluntary. The testimony falling very far short of this, it is the opinion of a majority of the court that the confessions made as above were improperly admitted.