# Beckham v. The State.

*Indictment for Larceny.*

1. *Lorceny; charge as to intent.*—On the trial of an indictment for the larceny of a hog a charge, requested by the defendant, that "unless the jury believe from the evidence that the felonious intent existed at the time of the taking they must find for the defendant," should be given.

2. *Same; confession.*—In cases of alleged confession under threat, the controlling inquiry is, whether there had been any threat of such a natuie as that from fear of it the prisoner was likely to have told an untruth; if so, the confession should not be admitted.

3. *Same.*—The exclusion from the jury of a confession rests on its connection with the inducement; they stand to each other in the relation of cause and effect, and if it is apparent that no such connection exits. there is no reason for the exclusion of the evidence.

4. *Same.*—Whether a confession was made voluntarily, or not, is for the court to determine upon consideration of the condition, situation and character of the prisoner, and the circumstances under which it was made.

5. *Same.*—All confessions are *prima facie* involuntary, and they

[Beckham v. The State.]

can be rendered admissible only by showing that they are voluntary and not constrained, and this should be made satisfactorily to appear.

6. *Same.*—A confession by the defendant, to the owner of a hog, under threat that he would put defendant "where the dogs would not bother him," is admissible, where it appears that the defendant had been taken into custody by the owner of the hog without warrant, was inferior in station and force to such owner and was unresistingly dominated by the latter.

APPEAL from the Circuit Court of Clarke.

Tried before the Hon. JAMES T. JONES.

The appellant was indicted, tried and convicted for the larceny of a hog.

The testimony tended to show that the defendant, in company with one Bradford, went to a swamp in high water, and they, together, found two or three hogs, which they carried to their homes; that at the time of taking said hogs, it was understood between the defendant and the said Bradford, that while the hogs did not belong to either of them, they would carry them home, and let it be known in the community that they had them; that this fact was told by said Bradford to one Molton, who had lost a hog, and upon inquiry it was found that the hog which the defendant had was said Molton's. The conversation had between Molton and the defendant is sufficiently stated in the opinion, as are also the rulings of the court which are considered on this appeal.

WM. L. MARTIN, Attorney-General, for the State.

HARALSON, J.—I. The defendant asked the court to charge, that "unless the jury believe from the evidence that the felonious intent existed at the time of the taking (of the hog alleged to have been stolen) they must find the defendant not guilty." The charge asked was a proper one in any indictment of the kind, and as applicable to this case, was of especial importance to the prisoner, since there was evidence tending to show, that if he had any intention to steal the hog, such intent was formed after the caption and asportation.—1 Wharton's Cr. Law, § 883; *Spivey v. State,* 25 Ala. 90; *Rountree v. State,* 58 Ala. 381; *Griggs v. State,* 58 Ala. 425; *Weaver v. State,* 77 Ala. 26; *Crocheron v. State,* 86 Ala. 64.

II. The owner of the hog alleged to have been stolen, in his examination as a witness for the State, stated that he asked the defendant about having the hog or shoat and that defendant stated, that he did have an unmarked shoat at his house, but that it did not belong to the witness, but belonged

[Beckham v. The State.]

to defendant; that witness then stated to defendant, in the presence of one Cobb, "that it was no use to deny having the shoat; that he had stolen the same, and that he, witness, intended to have said shoat, and also intended to put him, defendant, where the dogs would not bother him;" that witness and said Cobb then took defendant and started to defendant's house, about a mile distant, in search of the hog, and defendant, when in about two hundred yards of his house, stated that said hog did belong to the witness, Molton, and that he wanted to buy the same from the witness.

This alleged confession, the defendant moved to exclude, upon the ground, that the same was not voluntary, and was made by defendant because of the threat made by the owner of the hog, Molton, that he intended to have said hog, and intended to put defandant "where the dogs would not bother him," and because the said Molton and Cobb had defendant in their possession and custody, since the making of the threat.

III.   It would serve no good purpose to here discuss the admissibility of confessions, for we can add nothing which would not be a reiteration of what has, many times before now, been decided.   We refer only to such principles as are applicable to this case.

In cases of alleged confession under threat, the controlling inquiry is, whether there had been any threat of such a nature as that from fear of it the prisoner was likely to have told an untruth.   If so, the confession should not be admitted.

Its exclusion rests on its connection with the inducement; they stand to each other in the relation of cause and effect. If it is apparent that no such connection exists, there is no reason for the exclusion of the evidence.—Wharton's Cr. Ev. § 672; 1 Gr. Ev. § 219; 3 Amer. & Eng. Encyc. of Law, 472; *Brister v. State*, 26 Ala. 128; *King v. State*, 40 Ala. 314; *Sampson v. State*, 54 Ala. 241.

Whether a confession was made voluntarily or not, is for the court to determine upon consideration of the condition, situation and character of the prisoner, and the circumstances under which it was made.—1 Brick. Dig. 509, § 859; *Porter v. State*, 55 Ala. 95; *Young v. State*, 68 Ala. 569.

The defendant in this case is shown to have made the confession attributed to him, in the face of a charge of his guilt, by the party claiming to own the hog, accompanied by a threat that he intended to have it, and also, that he "intended to put the defendant where the dogs would not bother him."   It may be fairly inferred that the defen-

dant was a person inferior in force and station to the claimant of the hog and his friend, Cobb. He offered no resistance by word or deed to the charge that had been made against him. They took him into custody on the heels of the accusation and marched him off, without any resistance or remonstrance from him, to his own house, in search of the hog. He had admitted to them, before charged with the crime, that he had an unmarked shoat at his house which he claimed. These two men evidently dominated defendant to the extent of awing him into unresisting submission as a prisoner, without legal warrant. Exactly what Molton meant by putting the defendant where the dogs would not bother him, we are not given to understand, nor is our understanding of what he meant very material. The question is, What did the defendant understand or fear the threat to mean? The contention of the State is, that he must have understood it to mean no more than that Milton intended to prosecute him for the alleged theft. But we are not sure that a prisoner like this one charged with larceny, placed under such a threat, captured without warrant and taken off by two men as he was, would come to the conclusion that he was to be let off lightly as with a prosecution. Might not such a party have feared punishment of a graver character, and have been persuaded in his mind, that it was better to compromise out of his difficulty, by acknowledging that the hog belonged to Molton, and by offering to pay him for it? We think it not unlikely that, situated as he was he came to some such conclusion, and made the admissions he did, with the hope thereby to escape the wrath of his captor, and the execution of the threat he had made against him, so capable of a construction of violence, by a timid and non-resistant person.

All confessions are *prima facie* involuntary, and they can be rendered admissible only by showing that they are voluntary and not constrained, and this should be made satisfactorily to appear. *Redd v. The State*, 69 Ala. 255 ; *Young v. The State*, 68 Ala. 569.

We are of the apprehension the confession in the case was improperly admitted.

Reversed and remanded.