# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## DECEMBER TERM, 1887.

### Amos v. The State.

*Indictment for Murder.*

1. *Admissibility of confessions as evidence.*—All confessions are *prima facie* involuntary and inadmissible, and can only be rendered admissible by showing affirmatively that they are voluntary.

2. *Accomplices and conspirators.*—Where the deceased came to his death by violence inflicted by one or more of three persons who were present at the time, the others aiding or encouraging the deed, or ready to assist if necessary, whether present for the purpose by preconcert, or forming the common illegal purpose at the time, all are equally guilty, and the acts of any one are admissible as evidence against all; and it is for the jury to determine the existence of such preconcert, conspiracy, or common purpose.

3. *Murder in first degree; charge as to.*—While all the four statutory elements of murder in the first degree (Code, § 4295) may be embraced in the term "formed design," it is best to pursue the statutory definition in charging the jury.

FROM the Circuit Court of DeKalb.

Tried before the Hon. JOHN B. TALLY.

The indictment in this case charged, that Rube Amos, Bud Amos and Tobe Amos, "unlawfully and with malice aforethought, killed William Fuller, by striking him with an axe;" or, as alleged in the second count, "by stabbing him with a knife;" or, as in the third count, "by striking him with an axe, and cutting and stabbing him with knives." Bud and Tobe Amos, being duly arraigned, and on trial together, applied for a change of venue, and excepted to the refusal of the court to grant it; after which they pleaded not guilty, and were tried on issue joined on that plea, being convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for twenty years. On the trial, as appears from the bill of exceptions, it was proved

1

[Amos v. The State.]

that the homicide was committed on the evening of February 3d, 1886, in "an old outhouse on the mountain, about fifty yards from the public road," where the deceased had gone in company with a lewd woman, Elizabeth Rigsby by name, whose testimony as to the killing was as follows: "The day was dark and rainy, and she and Fuller were sitting by the fire late in the evening. They had whiskey, and had been drinking, and Fuller was singing *The Drunkard's Doom.* The defendants, with Rube Amos, came rushing into the house, and said, '*Here he is, G— d— him, kill him.*' Fuller then jumped up, and Tobe Amos struck him on the shoulder, and they all got him down; Tobe Amos got down over him, and cut him several times in the arm and leg; Bud Amos struck him in the head with a short-handled axe; and Rube Amos held one of his arms, and cut him with a knife in the leg. Fuller had a gun in his hand when he arose, but Rube Amos got the gun from him, and shot at witness, setting her clothes on fire. Fuller said, '*I am a dead man;*' and Bud Amos said, '*You are not, but will be soon,*' and struck him again with the pole of the axe." The State introduced evidence, also, tending to show that the defendants went to the house by preconcert, for the purpose of driving Fuller and the woman out of the house, where there were some beds and other things which belonged to Rube Amos, or his deceased wife. Fuller died of his wounds in a few hours, and the defendants were arrested on the next day, charged with the murder. J. J. Forrester and Elijah Kidd, by whom they were arrested, were examined as witnesses for the State, and each was asked, "What did Tobe Amos say about participating in the killing of William Fuller?" Each answered, "Tobe Amos said, if he had taken his wife's advice, he would not have been in the condition he was;" but neither of the witnesses stated any other circumstances attending these declarations. The defendants objected to this question and answer each, and duly excepted to their admission as evidence. There was evidence, also, of declarations by Rube Amos, to the effect that he alone inflicted the injuries on Fuller; and Tobe Amos testified on the trial, that the difficulty occurred between Fuller and Rube Amos before he and Bud Amos reached the house, and that Rube was shot in the hand by Fuller. There were numerous exceptions to the admission of evidence, which require no special notice.

The defendants requested the following charges in writing: (10.) "Before the jury can convict the defendants, they

must be satisfied from the evidence, beyond a reasonable doubt, that they killed, or helped to kill Fuller, by an axe, or a knife, or an axe and knives; and if there is such conflict in the evidence, as to an axe being used by Bub Amos, as to raise a reasonable doubt in the minds of the jury as to whether he used an axe; and if they are not satisfied beyond a reasonable doubt that he used a knife, and there was no conspiracy between the three Amos boys, then they must acquit Bud Amos." (11.) "Before the jury can convict the defendants, they must be satisfied from the evidence, beyond all reasonable doubt, that they killed the deceased, or helped to kill him, with an axe, or a knife, or an axe and knives; and if from the evidence there are such circumstances as to refute and contradict the fact that Tobe Amos, on the occasion of the killing, used a knife; and if they are satisfied that Tobe Amos never used an axe, and that there was no conspiracy, then they must acquit said Tobe Amos." (14.) "Before the jury can convict the defendants, the proof must exclude every other hypothesis but that of their guilt." The court refused each of these charges, and the defendants excepted to their refusal.

DOBBS & HOWARD, for the appellants.

THOS. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—The defendants were tried on an indictment charging them with murder, and they were convicted of that offense in the second degree. Several witnesses testified to confessions made by the different defendants. Among them was one Ferguson, who aided in arresting them. The confession of which he gave testimony was made while the prisoners were in custody. He was asked, "What did defendant Tobe Amos say about participating in the killing of William Fuller?" His answer tended to criminate him. There was objection and exception alike to the question and the answer. The record is silent as to what caused this confession, or called it out. Inducements or fear may have preceded the confession, and there is nothing in the record to show that they were not brought to bear upon him. It has been too long the rule of this court to be now disputed or questioned, that "all confessions are *prima facie* involuntary and inadmissible, and they can be rendered admissible only by showing that they are voluntary and not con-

strained."—*Sampson v. State*, 54 Ala. 241; *Young v. State*, 68 Ala. 569; 3 Brick. Dig. 285, §§ 552 *et seq.* The same objection applies to confessions proved by other witnesses. This error must work a reversal of this case.

There was testimony tending to show that the deceased came to his death by violence inflicted by one or more of the brothers Amos, and that the three were present, aiding, encouraging, or giving countenance to the deed. Whether in fact the violence was done by one, or more than one; whether they went there with a common purpose to do violence, or to see it done, or to aid or encourage the doing of it, or to lend assistance should it become necessary; each and all of these were proper inquiries for the jury, and the testimony justified their submission to that body. So, if, being present without preconcert, they entered into a common illegal purpose, and one or more of them did the deed of violence, and the others were present, aiding, abetting, encouraging, sanctioning, or giving countenance to the unlawful act, or ready to lend assistance if it should become necessary; and the jury, by the proper measure of proof, find either one of these categories to be true, then, if the actor or actors be found guilty, the others are also guilty. Hence it is that, when there is testimony, sufficient in the opinion of the presiding judge to show a *prima facie* case of conspiracy, or community of purpose, then the acts of each may be proved on the trial against all, or any number of the alleged conspirators; and if the jury find that there was such conspiracy, or common purpose, then the act of each participant, done or sanctioned by one in aid of the common purpose, becomes the act of all in its criminating effect. *McAnally v. State*, 74 Ala. 9; *Jordan v. State*, 79 Ala. 9; *Williams v. State*, 81 Ala. 1; *Hughes v. State*, 75 Ala. 31; *Phœnix Ins. Co. v. Moog*, 78 Ala. 284.

Under the rules above declared, we do not find the trial court committed any error in the rulings on testimony, except the single one in regard to confessions. And under these rules, charges 10 and 11 asked were too narrow, were misleading, and should not have been given. Charge 14 asked by defendants is not adapted to the case made out by the testimony, is not precisely accurate, and would be very apt to confuse and mislead an ordinary jury. *Reasonable* should precede the word hypothesis. It was rightly refused.

In the general charge the court instructed the jury, that

[Fallin v. The State.]

the four elements necessary to constitute murder in the first degree, are all embraced in the words *formed design.* We are not prepared to say that there is error in this.—*Mitchell v. State,* 60 Ala. 26. It would be better, however, to charge in the language of the statute.—*Floyd v. State,* 82 Ala. 16.

The Circuit Court did not err in refusing a change of venue.

The questions raised on the drawing, summoning and impanelling the jury, will not again arise in the form presented in this record, and we will not consider them.

Reversed and remanded.