# Thomas *v.* The State.

## *Indictment for Murder.*

1. *Homicide; accomplice and conspirator; charge to the jury.*—On a trial under an indictment for murder, where it is shown that the deceased came to his death by being shot by one of three persons, who were present at the time, and there was evidence tending to show that the defendant, while he did not fire the fatal shot fired at the deceased, was with the person who fired the fatal shot, encouraging him and ready to assist him, if necessary, the defendant is guilty of the crime committed, although there may have been no previously formed purpose or agreement between him and the other two persons to do an illegal act; and, therefore, charges which withdraw from the jury the question of defendant's culpability as an immediate aider or abettor in the offense, are erroneous and properly refused.

2. *Same; same; same.*—In such a case, · if the defendant acted maliciously with the slayer and his other associate and shot at the deceased, it is for the jury to say whether such conduct on his part was for the purpose and had the effect of encouraging the slayer to fire the fatal shot; and a charge which pretermits this consideration in its instruction to the jury, is erroneous and properly refused.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The appellant, Dan Thomas, was indicted and tried for the murder of Albert Harris, was convicted of manslaughter in the first degree and sentenced to the penitentiary for ten years.

On the trial the evidence showed that one Jerry Williams and Dave Williams, who were not related to each other, got into a difficulty at a negro dance, and that as Dave Williams walked out of the house, the defendant Dan Thomas and Pink Thomas, his brother, went with him; that Jerry Williams followed them, and as he left the house called to the deceased, Albert Harris, to bring him his pistol. That the deceased brought the

pistol to Jerry Williams, and thereupon Dave Williams apologized to Jerry Williams, and they all started back into the house. Jerry Williams was in front and the deceased followed him. A short distance from the deceased and Jerry Williams, the defendant Dave Williams and Pink Thomas followed, each behind the other in the order named. As they were starting into the house, the deceased took Jerry Williams to task for not shooting the man with whom he had the difficulty, and said if he had known that he, the defendant, would not shoot him, he, the deceased, would have done it. The deceased then turned to the defendant and asked him if he did not believe what he had said. Thereupon Pink Thomas, who was behind the defendant and Dave Williams, fired upon the deceased and inflicted the fatal wound.

The evidence for the State tended to show that the deceased made no demonstration and had no pistol at the time he was shot; while the evidence for the defendant tended to show that his manner was threatening and he had his hand upon his hip pocket. There was other evidence tending to show that immediately after Pink Thomas shot the deceased the defendant and Dave Williams both fired at the deceased. The evidence for the defendant tended to show that these shots were not fired by the defendant and Dave Williams. The evidence showed without conflict that the only shot that struck the deceased was the one fired by Pink Thomas.

One of the witnesses introduced for the State testified that just after the difficulty he heard the defendant and Dave Williams and Pink Thomas, while they were talking about the shooting, say that the defendant said that all shot, but none hit but Pink.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If from the evidence you believe (1) that the defendant fired a shot, (2) that the shot fired by defendant was fired after the shot was fired by Pink Thomas, (3) and that the shot fired by defendant did not hit Albert Harris, then you can not convict the defendant of murder or manslaughter unless you further

[Thomas v. The State.]

believe from the evidence and believe it beyond a reasonable doubt, (1) that before the shot was fired by Pink Thomas there had been formed between Pink Thomas and the defendant a common purpose to take life of Albert Harris, and (2) that the shot fired by Pink Thomas was fired in pursuance of this common purpose or was fired as a natural or probable result of said common purpose." (2.) "If from the evidence you believe (1) that defendant fired a shot, (2) that the defendant fired it immediately after the shot was fired by Pink Thomas and fired it with the intent to hit Albert Harris or to aid Pink Thomas or to encourage him or to incite him, you can not find the defendant guilty of murder or manslaughter, unless you further believe and believe it beyond a reasonable doubt and believe it from the evidence, (1) that before the shot was fired by Pink Thomas there had been formed between Pink Thomas and the defendant a common purpose to take the life of Albert Harris, (2) that the shot fired by Pink Thomas was fired in pursuance of the common purpose so formed, or was fired as the natural and probable result of such common purpose so formed." (5.) "The defendant ought not to be found guilty unless the evidence in the case satisfies you beyond a reasonable doubt (1) that between defendant and Pink Thomas there was an understanding or agreement or conspiracy to take the life of Albert Harris or to do him some bodily harm, (2) that this understanding or agreement or conspiracy was made before the fatal shot was fired, (3) that the fatal shot was fired in pursuance of the understanding or agreement or conspiracy." (6.) "I charge you, gentlemen of the jury, that if you believe from the evidence that the defendant fired a pistol at Albert Harris, unless the ball or bullet from said pistol struck the said Albert Harris or contributed to his death, you can not find the defendant guilty of homicide in any degree, unless you further find from the evidence that there was a prearrangement or agreement between the defendant and Pink Thomas to take the life of Albert Harris or to do him some bodily harm." (7.) "The court charges the jury that even if they

[Thomas v. The State.]

find from the evidence that the defendant and his associates acted illegally and maliciously in what they did, with the same end in view, yet unless you are satisfied from the evidence beyond a reasonable doubt and to a moral certainty that their acts were done pursuant to a mutual agreement, you should not convict the defendant unless you believe from the evidence beyond a reasonable doubt and to a moral certainty that defendant aided and abetted Pink Thomas in the infliction of the fatal wound."

No counsel marked as appearing for appellant.

CHAS. G. BROWN, Attorney-General, for the State, cited *Jolly v. State,* 94 Ala. 23; *Amos v. State,* 83 Ala. 1.

SHARPE, J.—From the evidence it was open to the jury to infer that defendant himself fired a pistol at the deceased and that he being present by his conduct encouraged another to commit the homicide or abetted that other in its commission. Such participation in a crime makes the participant criminally responsible though there may have been no previously formed purpose or agreement to do an illegal act.—*Caddell v. State,* 129 Ala. 57; *Jolly v. State,* 94 Ala. 19; *Amos v. State,* 83 Ala. 1. Each of the charges 1 to 6, inclusive, would have withdrawn from the jury the question of defendant's culpability as an immediate aidor or abettor in the offense.

If the defendant, acting maliciously with the slayer and other associates, shot at the deceased, the jury might have found that such conduct on his part was for the purpose, and had the effect, of encouraging the slayer to fire the fatal shot. Charge 7 was calculated to mislead the jury to pretermit that consideration and was, therefore, properly refused.

There is no error in the record.

Judgment affirmed.