# Starks *et al. v.* The State.

### *Indictment for Murder.*

1. *Dying declarations; when properly admitted.*—When a person is mortally wounded and while lying on the ground in a helpless condition, states to a person who comes up to him: "I am shot to death; I cannot live," there is laid a proper predicate for the introduction of subsequent statements made immediately thereafter by the deceased as dying declarations; and such dying declarations in which the deceased stated the circumstances of the killing and what he was doing at the time the fatal shot was fired, are admissible in evidence as a part of the *res gestae* and as shedding light on the main fact of the killing.

2. *Indictment for murder; conspiracy; charge in reference thereto.* On the trial of two defendants under an indictment for murder, where the evidence shows that the defendant had burglarized a store and that the fatal shot was fired by one of the defendants while the other was inside of the store, a charge is erroneous and properly refused which instructs the jury that if they do not believe beyond a reasonable doubt that the defendant who was in the store at the time of the killing had formed a conspiracy with the other defendant to kill the deceased, then they must acquit the defendant who did not fire the fatal shot, of murder in the first degree.

APPEAL from the City Court of Montgomery.

Tried before the Hon. WILLIAM H. THOMAS.

The appellants, Will Starks and Alex Means, were indicted and tried for the murder of Flem Foster, were convicted of murder in the first degree and sentenced to be hanged.

On the trial of the case, it was shown that in Montgomery county before the finding of the indictment, about 9 o'clock at night, Flem Foster was shot down near the store of one Stanford, and that he died from the effects of said wound. Two of the State's witnesses testified that on the night of the killing, about 9 o'clock, they heard the report of a gun, and upon going in the direction in which the gun was fired, they found the deceased,

Flem Foster, lying about 25 feet from the córner of Stanford's store; that they went to where the deceased was lying; that the deceased upon being asked what was the matter said: "I am shot to death; I cannot live," and further stated "that he did not know who shot him." The solicitor asked each of these witnesses what else the deceased said. The defendant objected to each of these questions as asked the witnesses, respectively, upon the ground that it called for irrelevant, immaterial and incompetent evidence, and called for a dying declaration for which no sufficient predicate had been laid. The court overruled each of these objections and the defendants separately excepted. Each of the witnesses testified that the deceased further stated that he was going down a path from the store, and when he was near the store, he heard a bell ring which sounded like a bicycle bell; that his attention being directed to the ringing of the bell he stopped and that as soon as he stopped some one shot him, and that the flash of the gun was from the direction of the corner of the store. The evidence for the State further showed that Stanford's store was burglarized on the night of the killing.

The State introduced two witnesses who testified that the defendants made confessions, and that these confessions were voluntary and were made without any threats made or without the offer or hope of reward or any inducement held out. In the confession so testified to by said witnesses, the defendants admitted that they burglarized the store of Stanford on the night of the killing; that at the time of the killing Alex Means was in the store and Will Starks was standing watch near the corner of the store, and that as the deceased stopped, Will Starks shot him. These witnesses further testified that upon their asking Starks what he had shot the deceased for, he replied that, "When Foster came up there and stopped and commenced peeping around I shot him; I did not know what he was going to do." The said witnesses further testified that Starks stated that he did not know who it was when he shot.

Upon the introduction of all the evidence the defendants requested the court to give to the jury the following written charge, and separately excepted to the

[Starks *et al.* v. The State]

court's refusal to give the same as asked: "If the jury do not believe beyond a reasonable doubt that Alex Means had formed a conspiracy with Will Starks to kill the deceased, then they must find Alex Means not guilty of murder in the first degree."

W. F. HERBERT, for appellant.

MASSEY WILSON, Attorney-General, for the State.— There was a sufficient predicate laid for the introduction of the dying declarations, and the statements contained in the dying declarations were admissible as a part of the *res gestae.*—*Johnson v. State,* 102 Ala. 1; *McQueen v. State,* 103 Ala. 12; *Gibson v. State,* 126 Ala. 59.

The charge requested by the defendant was erroneous and properly refused.—*Thomas v. State,* 130 Ala. 62; *Bridges v. State,* 110 Ala. 15; *Jolly v. State,* 94 Ala. 19.

HARALSON, J.—A proper predicate for the admission of the dying declarations of the deceased was laid, and there was no error in their admission in evidence. The statements made, at the time, by the deceased, as called for by the State, were a part of the *res gestae* of the homicide, and were properly admitted as incident to what was done, as shedding light on the main fact.— *Johnson v. State,* 102 Ala. 1, 15; *McQueen v. State,* 103 Ala, 12; 6 Am. & Eng. Ency. Law (1st ed.), 123; 21 Ib. 99, 101-2.

The charge requested by the defendants was properly refused.—*Thomas v. State,* 130 Ala. 62; *Evans v. State,* 109 Ala. 13; *Jolly v. State,* 94 Ala. 19.

These were the only exceptions reserved.

Affirmed.