# Maloy *v.* The State.

## *Murder.*

(Decided June 21, 1913.　Rehearing denied July 8, 1913.
62 South. 961.)

1. *Homicide; Dying Declarations.*—Where deceased said to two witnesses on the night of the homicide, and to two others the next morning that he could not get well, and the evidence in connection with the nature of the wound showed that he entertained no hope of recovery, statements made to such witnesses were admissible as dying declarations.

2. *Same; Credibility.*—The credibility of evidence on the preliminary proof as a predicate for the admission of dying declarations is for the trial court.

3. *Same.*—The fact that a witness testified to contradictory statements as to what decedent said on some other trial or some other occasion would not authorize the exclusion of the declarations if the proper predicate had been laid for their admission.

**4. Same; Aiding and Abetting.**—Where both defendant and his father participated in the encounter with deceased, it was for the jury to determine from the evidence which party started the fight, and whether defendant aided, abetted, assisted or encouraged his father, and if he did, and his father was guilty, the defendant was guilty, though the father may have struck the fatal blow, and though there may not have been a conspiracy.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Jim Maloy was convicted of murder in the second degree, and he appeals. Affirmed.

The defendant was jointly indicted with his father, V. L. Maloy, for the murder of one McDougal; the evidence tending to show that the Maloys and McDougals were friendly at that time or just prior thereto, but that while on the fair ground at Samson, Ala., the father and the deceased got into an altercation about a bond, which resulted in deceased striking the elder Maloy, whereupon the present defendant rushed into the fray and cut deceased twice in the abdomen. The elder Maloy having recovered, again engaged in the affray and cut deceased in the back; the witnesses differing as to the details of the cutting.

The following charges were refused to the defendant: (1) "If the jury have a reasonable doubt as to whether Jim Maloy cut the blow that killed McDougal, you should acquit the defendant." (3) "Before the jury can convict the defendant, they must believe beyond a reasonable doubt not only that Jim Maloy cut the deceased, but they must go further and be convinced beyond all reasonable doubt that such cutting caused his death, and if you have a reasonable doubt as to either proposition, then you should acquit the defendant." (4) "If it is probable from the evidence that Jim Maloy did not cut deceased to death or that the cutting by defendant, if he did any, did not produce or contribute

[Maloy v. The State.]

to produce death, the defendant is not guilty." (6) "If you have a reasonable doubt as to who struck the fatal blow, or the cutting that produced death, then you should acquit." (7) "If you believe the evidence, you cannot convict the defendant of murder in the second degree."

W. O. MULKEY, for appellant. Even if the father had killed McDougal, he could not have been guilty under the evidence of any higher offense than manslaughter.— *Ex Parte Brown*, 65 Ala. 446; *Smith v. State*, 83 Ala. 28; *Scales v. State*, 96 Ala. 69. The son, therefore, having struck in defense of the father could be guilty of no higher offense than the father was guilty of. The evidence was not sufficient to authorize the admission of dying declarations.—1 Greenl. sec. 156; *Justice v. State*, 99 Ala. 180, and cases there cited. There was no legal evidence of a conspiracy, and hence, charges requested by defendant should have been given.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. Proper predicate was laid for the admission of dying declarations. —*Husey v. State*, 87 Ala. 121; *Ex Parte Key*, 5 Ala. App. 274. The charges requested by defendant were properly refused.—*Henderson v. State*, 156 Ala. 1; *Thomas v. State*, 130 Ala. 62.

PELHAM, J.—One of the propositions most earnestly insisted upon by the appellant relates to the admission of dying declarations of the deceased, made at different times to the witnesses deposing to them between the time deceased received the fatal wound on the night of Saturday, October 25, 1911, and the hour of his death on the following Monday morning. The contention is

not based upon an attack on the rules of law so often laid down as to the admissibility of testimony of this nature, but is to the effect that no sufficient predicate was laid for the admission of the evidence in this case, in that it was not sufficiently shown that at the time the declarations were uttered the declarant was under the sense of impending dissolution—that he had the solemn conviction that death was near at hand and had abandoned hope of recovery at the particular time of the utterances testified to by the witnesses.

The bill of exceptions contains the statement that it sets out all of the evidence in the case; but it is self-contradictory on its face in this respect, for it does not even purport to set out the substance of the testimony of a number of the witnesses, but contains a loose summary of the tendencies of the evidence of many of the witnesses in such a form as to conclusively show that there was considerable evidence before the court below that is not pretended to be set out in substance for our consideration here. From what does appear, it is shown that the deceased was killed in a rencounter with the defendant and his father at night in the fairgrounds at Samson, Ala., by being stabbed or cut by one or the other of the Maloys—father and son. The fatal difficulty occurred about 9 o'clock Saturday night within the radius of the light from the swinging gaslights used for lighting the fair grounds, and in the presence of many witnesses, who differed widely in their versions of the affair; but it seems to be practically without contradiction that the elder Maloy (Vince L.) who was jointly indicted with the defendant, but separately tried, and whose case is not before us on this appeal, and the deceased were first engaged in the difficulty, when the defendant took a part in it. There was more than one knife wound inflicted upon the body of deceased, and

the evidence is in conflict as to whether father or son
inflicted the fatal wound—some of the testimony show-
ing that each of them had an open knife that was used
during the progress of the difficulty.   There is, however,
no controversy but that a wound received by the de-
ceased at the hands of one of the Maloys, inflicted in
the abdomen during the progress of the fight, was the
direct cause of the death of the deceased.   This wound
was made by a severe lick that produced a cut in the
abdomen from which the entrails protruded.   The father
of the deceased testified that he was with his son dur-
ing the principal part of the time after the cutting about
9 o'clock Saturday night until he died the following
Monday morning at 11 o'clock, and that the deceased
stated that they had killed him for nothing, and that
he was going to die; that this utterance was made Sat-
urday night shortly after he got to where the declarant
was; and that he made practically the same statement
Sunday morning, and said: "I am doing to die; I will
never get up from here."   Another witness testified that
the declarant told him at the house where he was lying
Saturday night after the difficulty that he thought he
could not get over it—that he was "obliged to die." Still
another witness testified that the deceased told him on
Sunday morning that he (declarant) could not live.
The dying declarations admitted in evidence were made
Saturday night and Sunday morning, and every utter-
ance made by the declarant on these days shows his be-
lief that death was imminent, and that he entertained
no hope of recovery; nor was there any evidence going
to show that there was a revival of hope upon his part
at any time before dissolution; but on the contrary it
appears with sufficient clearness, from the evidence go-
ing to show a predicate, taken in connection with the na-
ture and extent of the wound from which the declarant

was suffering, that he had a settled and unaltered conviction that death was impending at the time of making the declarations admitted in evidence.

The fact that the father of the declarant had made contradictory statements on some prior occasion or former trial with reference to what the declarant said, or did not say, we do not think was sufficient to authorize the trial court to exclude the dying declaration testified to by him. The declarations were nevertheless admissible, if the proper predicate had been shown on this trial—and the credibility of the evidence on preliminary proof was a matter for the trial court. We can arrive at no other conclusion from the evidence before us bearing on this subject, under the well-known and often declared principles, than that the trial court properly admitted the dying declarations testified to by the witnesses, as set out in the bill of exceptions.—*Hussey v. State*, 87 Ala. 121, 6 South. 420; *Ex Parte Key*, 5 Ala. App. 274, 59 South. 331; and authorities cited in these two cases.

The tendencies of the evidence, as we read the recitals of the bill of exceptions, clearly leave the question for the determination of the jury as to who was at fault in bringing on the difficulty as between the first combatants (i. e., Vince L. Maloy and the deceased). Even though it be conceded, as contended by appellant, that no inference can be drawn from the evidence authorizing the conclusion that there existed any prearrangement or conspiracy between the Maloys to slay the deceased, or do any other unlawful act which resulted in his death, and that the rencounter was an occurrence taking place under the exigencies of the moment, yet it is without conflict in the evidence that the defendant was present and participating. It was certainly open for the jury to infer from the tendencies of the evidence in this case

that he aided, abetted, incited, or encouraged his father to strike the fatal blow (if he did not do so himself); and if he did one or all of these things he was guilty, if his father was guilty, although there may have existed no prearrangement or conspiracy between them.—*Henderson v. State,* 156 Ala. 1, 47 South. 76; *Thomas v. State,* 130 Ala. 62, 30 South. 391. The conclusion follows that the court was not in error in refusing charges Nos. 1, 3, 4, 6, and 7, requested by the defendant.

The record contains no error that would justify a reversal.

Affirmed.