Appeal from Sixth District.

## STATE v. CHURCH.

No. 3318.   Decided June 19, 1919.   (182 Pac. 218.)

1.  LARCENY—SUFFICIENCY OF EVIDENCE—FELONIOUS TAKING. In a prosecution for larceny of a steer, evidence of defendant's attempts to conceal the identification marks and his declarations *held* sufficient to show a felonious taking though he claimed he killed the steer in the mistaken belief that it belonged to his wife.  (Page 538.)

2.  LARCENY—SUFFICIENCY OF EVIDENCE—IDENTITY OF PROPERTY. In a prosecution for larceny, evidence *held* sufficient to show the identity of an animal killed, though the brand and marks had been mutilated.  (Page 538.)

3.  CRIMINAL LAW—EVIDENCE—PARTS OF STOLEN ANIMAL. In a prosecution for larceny of a steer, it was not error to admit in evidence pieces of the ears arranged according to the judgment of a witness for the state to show the marks thereon.  (Page 539.)

4.  CRIMINAL LAW—EVIDENCE—VOLUNTARY ADMISSIONS OF DEFENDANT. Admissions of defendant to the sheriff concerning the offense are admissible in evidence, where the sheriff had made no promises nor threats, but merely called defendant's attention to the statute relating to killing of live stock on the range.  (Page 540.)

5.  LARCENY—REQUESTED INSTRUCTIONS—APPLICABILITY TO EVIDENCE. Where defendant testified that he and his stepson pursued and killed the animal in question, and defendant later admitted the killing to the sheriff, requested instructions, that the undisputed evidence showed that the stepson killed the steer when defendant was absent, and that defendant could be convicted only on proof of conspiracy, and that he must be acquitted if he had nothing to do with the killing prior thereto, was properly refused as inapplicable to evidence.  (Page 540.)

Appeal from District Court, Sixth District, Garfield County; *H. N. Hayes*, Judge.

Ira B. Church was convicted of grand larceny, and he appeals.

AFFIRMED.

*Bean & Hunt* of Richfield, for appellant.

*Dan B. Shields,* Atty. Gen., and *O. A. Dalby, H. Van Dam, Jr.,* and *J. H. Wolfe,* Asst. Attys. Gen., for the State.

CORFMAN, C J.

The defendant was convicted of the crime of grand larceny, June 15, 1918, in the district court for Garfield county, and sentenced for an indeterminate term in the state prison. He was charged in 'the information with the felonious taking of a certain steer, the property of Mahonri M. Steele & Sons Company, a corporation. An appeal is taken to this court from the judgment of conviction.

The principal errors assigned and relied upon by the defendant for a reversal of the judgment are: (1) Insufficiency of the evidence to sustain the verdict of the jury in two particulars: (a) Failure to show a felonious taking of the steer; (b) failure to show that the steer was the property of Mahonri M. Steele & Sons Company. (2) The admission of certain testimony over defendant's objection. (3) The refusal of the trial court to charge the jury in accordance with certain requests made by the defendant.

Substantially, the facts are: The defendant and his stepson, one H. E. Marshall, were jointly complained of in the information with the crime of grand larceny. They were tried separately. The defendant Church resided at Tropic, Garfield county, and owned a ranch some fourteen miles away on or near what is known as Hunt creek. The wife of the defendant owned some cattle' ranging at or near the defendant's ranch. Among them was a two year old dark red heifer. Mahonri M. Steele & Sons had a ranch, three or four miles distant from the defendant's ranch, upon which they ranged about 300 head of cattle. The Steele cattle were branded bar 3–S on the left rib, and marked with a crop off the left and upper bit in the right ear and a wattle on the left jaw. In the fall of 1917, Steele & Sons Company, after gathering their cattle from the range to drive them to Delta, Utah, found that seven or eight head were missing. Among the missing was a dark red two year old steer branded bar 3–S. Along

about November 8th, after the main herd of Steele & Sons Company had been driven from the range, the defendant with H. E. Marshall made a trip to the defendant's ranch for hay. The defendant testified that his wife authorized him to kill her red heifer upon the range, as it was wild and the family needed the meat for their use. Both the defendant and H. E. Marshall testified that after arriving at the ranch they went out upon the range to search for the red heifer, and while doing so, on the day after arriving at the ranch, came across seven or eight head of cattle among them a red animal which they took to be the red heifer and which, while they were pursuing it on horseback, Marshall shot and killed. After killing the animal, they discovered for the first time that it was not a heifer but a red steer, the animal in question in this case. After consulting together, they concluded they had made a perilous mistake, but concluded it was best to dress the animal, take the carcass home, and ascertain, if they could, who was the owner of it, and try and effect a settlement. They then skinned the steer, cut out and stripped the brand from the hide, knocked the horns from and the teeth out of the head, cut the ears into bits and threw them into the under-brush, with the strips of the hide containing the brand, some distance from where the animal was killed. They then took the hide up a gully or wash and buried it by caving dirt over it. They then returned to their homes in Tropic, arriving about 11 p. m. of the same day that the animal was killed. The beef was divided between them, each party taking a part to his home. The testimony is not quite certain as to time, but about a day after the return of the defendant to his home from the range George C. Dodds, the sheriff of Garfield county, called at the defendant's home where he was served with fresh beef at dinner. The sheriff testified that he then advised the defendant that it was against the law to kill a beef without first notifying him or to have it inspected by two landowners in the county, and that he was guilty of a crime if he did not present the hide to him. The defendant replied: "I can't do it. I killed this animal up in Cannon-ville." The sheriff then said: "You have got to do it any-

how, Ira.'' The defendant claimed, that he had to get a load of hay upon East Fork, and said: ''I have to get it first.'' The sheriff then told the defendant he could go and get his hay. The defendant left, and the sheriff then procured a deputy and followed him. After following him some distance, the sheriff and the deputy met the defendant coming back, and on meeting them the defendant said to the sheriff:

"This is just worrying the life out of me. I have been thinking about it, and I had decided to come back and make a clean breast of it."

The defendant then told the sheriff when and where they had killed the steer; that they had killed a dark red two year old steer with short stubby horn and a little white on the end of the tail. It was then arranged for the defendant to accompany the sheriff and his deputy to the place of the killing. Arriving there, and after some search, the buried hide, parts of the ears, and strips of the hide that had contained the brand were gathered together and left in charge of the sheriff. The head, with the horns knocked off and the teeth out, was also found. The sheriff further testified that the defendant had said to him, in speaking of the killing of the steer:

"I went up there to violate the law. I went up to kill a deer and couldn't find any, and we saw this bunch of cattle there, and I let temptation get the best of me."

James A. Steele, a witness in behalf of the state, testified that about November 16, 1917, he met the defendant and H. E. Marshall at Panguitch, and they advised him while in conversation that they had killed a steer, and they presumed it belonged to Mahonri M. Steele & Sons Company and they wished to buy the steer. The witness informed them that he had no authority to sell, and that they had better write the company at Delta. The witness further testified that he advised them that it would be useless for them to write to the Steele Company unless they were sure they had killed the company's animal. They, the defendant and Marshall, then proceeded to mark out for the witness the bar 3–S brand and stated the bar was on the left rib of the animal they had killed. The witness then dictated a letter, which was signed

by the defendant and Marshall, to M. M. Steele, vice president of the Steele Company, which reads:

"Dear Sir:   From our best information you have several head of cattle left on this range.  We have one in our possession here, ear-marked as follows:   Crop off right, under bit and underhalf crop in left, branded 3-S with a bar over it on left ribs, dark red heavy set, two year old steer.  If you would like to sell him for the price of $60.00 please send bill of sale to James M. Steele and upon receipt of the same will deposit money with him for the above amount.  Said steer has wattle on left jaw.  Kindly answer to Jim by telephone at Circleville.  We will pay the phone bill.

"Ira B. Church.
"H. E. Marshall.

"P. S.  Anything we can do to look after your stuff, will be pleased to do so.  Ira B. Church and H. E. Marshall.  We expect to drive on Sunday, answer by telephone."

Alvin Jensen, a witness in behalf of the state, testified that he was manager and had charge of the Steele cattle in the summer of 1917, and that in the fall of that year they failed to gather, among others, a dark red blocky steer, two years old, stubby horns, white tip on the tail, branded bar 3-S on left rib.  The witness also testified that this steer was ear-marked; that he was purchased of another, and when purchased had an "under-half crop in the left ear and that mark in the right" (referring to certain parts of the ear then being exhibited to him together with the hide of the animal in question).  This witness also testified that he knew the steer in question, and that it was plainly branded, but that he could not make out the brand from the shredded portion of the hide where the brand had been cut out by the defendants.  The witness further testified on cross-examination that, when the main herd was driven from the range, he did not know whether or not the animal was then on the range; that it might have been driven off before, and "may be there now."

The defendant testified, as did also the witness H. E. Marshall, that they pursued the steer in absolute good faith and killed it believing it to be the wild heifer belonging to Mrs. Church, the wife of the defendant here; that, realizing their mistake, they became excited and concluded to destroy the identity of the animal by the acts performed in cutting out

the brand and shredding it, cutting the ears into bits, knocking out the teeth, breaking the horns from the head, and scattering them, while at the same time burying the hide. They also testified that they made some effort to find the owner of the animal, after the sheriff had visited them, and that they were prompted to write the above letter to the vice president of Mahonri M. Steele & Sons Company at the solicitation of the witness James A. Steele, in the hope of extricating themselves from the difficulty into which their mistake had placed them. The defendant also testified that he made the admissions to Sheriff Dobbs, concerning the killing of the animal and the disposition of the hide, ears, and head, with the brand and markings, on the representation that the sheriff was his friend, would do all he could for him to keep him out of trouble, and through the fear that otherwise he would be prosecuted for failing to comply with the statute before killing an animal upon the range. The defendant's testimony concerning many of his statements and admissions to the sheriff also conflicts in many particulars, not necessary to here point out or discuss, with the testimony of the sheriff in that regard.

After reviewing the testimony of all the witnesses, we are of the opinion that the contention of the defendant that the evidence was insufficient to justify the verdict cannot be sustained on either ground assigned. There was substantial evidence, as we have pointed out, tending to show a felonious taking. The thorough and careful methods adopted by the defendant and Marshall for obliterating the brands, marks, and other means of identifying the animal killed, was not at all incompatible with guilty intent to steal. The defendant's frank admissions to the sheriff, without any suggestion at the time that the animal was killed by mistake, and the letter written without any solicitation to the officer of the Steele Company, were facts and circumstances peculiarly within the province of the jury to pass upon. The same may be said with reference to the identity of the animal. The evidence is absolutely uncontradicted that the Steele Company    **1, 2** had been unable to gather from the range a steer of the description of the one killed. The brand, markings, and ap-

pearance in every detail tallied with the one killed and taken by the defendant and H. E. Marshall. It is true that one witness, the manager of the Steele herd on cross-examination answered that for all he knew the missing steer might still be on the range; yet the facts remained that an animal of the precise description, brand, and markings, of the Steele steer, had been killed there by the defendants. If the minute description given of it by the state's witness as well as the defendant, as to its age, size, color, brand, and markings, together with the production of the mutilated hide as an exhibit, was not, under all the circumstances sufficient to take the case to the jury, then the efforts to apprehend and convict offenders for stealing live stock from the public range had best be abandoned.

The defendant next complains that the trial court erred in the admission of certain testimony. The state offered as an exhibit pieces of the ears of the steer arranged upon a board for the purpose of showing, according to the judgment of a state witness, how they were before being cut into pieces by the defendant for the purpose of obliterating the markings. The witness was then permitted to point out and testify, over the defendant's objection, as to his judgment where and what the markings were. There is nothing in the record to show that the parts of the ears, admitted to have belonged to the steer, might not have been arranged in accordance with the views of the defendant or any other witness who might have differed from the witness who testified as to the arrangement.

It is also contended by defendant that the court erred in admitting the testimony as to the admissions made by the defendant concerning the killing of the steer. It is urged by counsel that the admissions were involuntary for the reason that the sheriff gave the defendant to understand that he was in a position to make the defendant trouble by reason of his failing to comply with the statute before killing an animal upon the range. Counsel cites 1 R. C. L. pages 553 to 558; 1 Greenleaf, Ev. section 219; *Amos* v. *State*, 83 Ala. 1, 3 South. 749, 3 Am. St. Rep. 682; *Ellis* v. *State*, 65 Miss. 44, 3 South.

188, 7 Am. St. Rep. 634; *Bradford* v. *State*, 104 Ala. 68, 16 South. 107, 53 Am. St. Rep. 24; 6 Am. St. Rep. 244, note; 46 Am. Rep. 255, note.

We do not think the rule announced by the authorities cited applies to the case at bar.

The sheriff testified that he made no promises nor threats against the defendant whatever, nor did anything more than read, or call his attention to, the statute. As we view the record, the admissions made to the sheriff, and in the letter to the vice president of the Steele Company, by the defendant were wholly without coercion and purely voluntary. We find no prejudicial error in the admission of any of the testimony complained of by defendant.

The defendant next complains of the failure of the trial court to charge the jury according to the following requests:

"The undisputed evidence in this case is that there was but one gun, and that Marshall had it and fired and klled the steer; and that Church was not present. Therefore, you are instructed that unless you find from the evidence, beyond a reasonable doubt, that the defendant and said Marshall conspired together to feloniously steal said steer prior to the time it was killed, it will be your duty to acquit the defendant."

"You are instructed that defendant would not be guilty of grand larceny, the offense charged, if he had nothing to do whether directly or indirectly with the steer, prior to its death, and at the immediate time of its killing, even though, after its death, he helped dress the same and appropriated some of the meat for his own use, for merely dressing the animal and appropriating the meat is not grand larceny on the part of the defendant unless he connived, aided, and abetted in its taking and killing."

We need not pause to discuss these requests. It is clear that neither of them as a whole correctly states the law applicable, to the facts in the case. In so far as the instructions refused were applicable to the facts, the trial court, in substance, had so charged the jury.

After careful review, we find no prejudicial error in the record. It is therefore ordered that the judgment be affirmed.

FRICK, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.