154 So.2d 758

**Joel T. BROWN**

v.

**STATE.**

**3 Div. 132.**

Court of Appeals of Alabama.

April 9, 1963.

Rehearing Denied May 14, 1963.

L. H. Walden, Montgomery, for appellant.

Richmond M. Flowers, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

CATES, Judge.

These statements of the case and facts come from the Attorney General's brief:

"After pleading not guilty to an indictment which charged him with the offense of robbery, appellant was tried in the Circuit Court of Montgomery County, Alabama. In accordance with the jury's verdict, he was adjudged guilty of the offense of assault with intent to rob, and was sentenced to imprisonment for five years, whereupon he gave notice of appeal. Appellant's motion to exclude the State's evidence and his motion for a new trial were denied. In accordance with law [Act No. 62, September 15, 1961], appellant was furnished with a free transcript of the evidence and other proceedings had in his trial.

\* \* \* \* \* \*

"The State's evidence tended to show conclusively that on the evening of Saturday, March 24, 1962, pursuant to a prearranged robbery plot, Cheryl Epperson lured L. H. Gray away from the Rendevouz Cafe to a darkened street area where he was attacked and beaten by appellant and one or two other men. It showed less conclusively that appellant and his companion or companions robbed Gray and divided among themselves and another man money taken from Gray.

"Appellant's evidence tended to show that he did not participate in the attack on Gray."

The appellant argues to us that the testimony was such that the jury should have found him guilty of robbery (a capital felony) or of naught. However, he did not except to the oral charge wherein the trial judge directed the jury that guilt of assault with intent to rob was one of three possible verdicts which they might give.

The Attorney General would have us distinguish the instant facts from those in Edwards v. State, 33 Ala.App. 386, 34 So.2d 173, and De Graf v. State, 34 Ala.App. 137, 37 So.2d 130. Were this the only point of enquiry, we should be compelled to affirm.

However, an inculpatory statement of Brown came into evidence without the State first proving that it was voluntary. We excerpt from the testimony of Cherrie (or Cheryl) Epperson, the bait who enticed Gray from the Rendezvous to a darkened street where, according to the State, he was set upon by the defendant:

"Q Well, didn't you spend the night with him that night, with Joel Brown?

"A Oh,—

"MR. WALDEN: Judge, we object to whether she's talked with Joel Brown.

"MR. SMITH: I don't know why, Mr. Walden. The Defendant was present; any statement he made, any inculpatory statement would be admissible.

"THE COURT: Overrule the objection.

"MR. WALDEN: We except.

"MR. MAURY D. SMITH: (Continuing)

"Q Did you spend the night with him?

"A Yes.

"Q Did you stay in a hotel?

"A Uh-huh. (Witness answering affirmatively)

"Q What hotel did you stay in?

"A That one on the main street.

"Q Dexter Hotel?

"A Yeah.

"Q Did he make any statement to you about beating this man?

"A Yeah.

"Q Did he tell you that he'd robbed him?

"A Yes.

"MR. WALDEN: Now, Your Honor, we object to him leading the witness.

"THE COURT: Don't lead the witness. Ask her what he actually said.

"MR. WALDEN: And we object to that, to the statement that was made.

"MR. SMITH: I'm sure you object to that, Mr. Walden.

"THE COURT: Overrule that objection.

"MR. WALDEN: We except, Your Honor.

"MR. MAURY D. SMITH: (Continuing)

"Q What did he tell you about robbing Mr. Gray?

"MR. WALDEN: Now, we object to that, so I'll have the record straight, to show that I objected.

"THE COURT: I'm going to sustain the objection.

"MR. SMITH: Now, if the Court please, is it the Court's ruling that this witness may not make a statement—

"THE COURT: No. She [may] make the statement, but the expression is objectionable, in the expression to what he said to you, about robbing.

"MR. MAURY D. SMITH: (Continuing)

"Q What, if anything, did Joel T. Brown say to you that night at the

Dexter Hotel about robbing Mr. L. H. Gray?

"MR. WALDEN: We object to the question.

"THE COURT: Overruled.

"MR. WALDEN: We except, Your Honor.

*"MR. MAURY D. SMITH: (Continuing)*

"Q You may answer the question, Miss Epperson.

"A Well, he said, when he got in—do you want me to tell it all?

"Q Just what he said to you in regard—Mr. Reporter read the question back to her.

"A Well, I'll have to tell you all the actions too.

"Q Well, I want to know, and I'm confining my question to what, if anything, did Joel T. Brown say to you about robbing Mr. L. H. Gray?

"MR. WALDEN: Now, Your Honor, we have an objection to that question.

"THE COURT: Overruled.

*"MR. MAURY D. SMITH: (Continuing)*

"Q Do you understand the question?

"A I think so.

"Q All right.

"A Joe—I said—

"MR. WALDEN: Would you let the record show that you overruled my objection?

"THE COURT: Yes. The record shows that.

"MR. WALDEN: All right. And I have an exception to that ruling.

*"MR. MAURY D. SMITH: (Continuing)*

"Q You can answer the question.

"A I asked Joe what happened, what went wrong at the Rendezvous, and he said, 'There wasn't a thing went wrong', and he said that him and this other guy was in the alley when Mr. Gray and me walked by there and they jumped on him and took some money off of him, and I said, 'How much did you take'? And he said, 'Twenty-nine dollars ($29.00), and he said Red Davis got ten dollars ($10.00) and that he got ten dollars ($10.00) and that that other guy got nine dollars ($9.00). And said that he had some pocket knives on him, and I think a check, but I'm not for sure.

"Q Said a check?

"A I'm not for sure though.

"Q You think he said that he, meaning Mr. Gray, had a check with him?

"A Uh-huh. (Witness answering affirmatively)

"MR. SMITH: I have no further questions.

"THE COURT: You may cross.

"MR. WALDEN: Now, Your Honor, I move to exclude that entire statement, which this witness has just said.

"THE COURT: Motion denied.

"MR. WALDEN: We except."

The court, per Head, J., in Bradford v. State, 104 Ala. 68, 16 So. 107:

"The defendant's objections to the introduction of his confessions were based upon the grounds that the evidence was irrelevant, immaterial, incompetent and illegal, and because the state had failed to show that the crime charged in the indictment had been committed. The question is whether these were sufficient to raise the objection that the confessions were not shown to have been voluntary; or, in

other words, whether the prisoner waived the required preliminary proof, by the generality of his objections. The rule is well recognized that confessions in criminal cases are prima facie inadmissible; and, unless waived, will not be received until the court, proceeding with great care and caution, is made satisfied by evidence that they were entirely voluntary. See the strong language used in following cases: Bonner v. State, 55 Ala. 242; Young v. State, 68 Ala. 569; Brister v. State, 26 Ala. 107; Owen v. State, 78 Ala. 425; Wilson v. State, 84 Ala. 426, 4 South 383; Amos v. State, 83 Ala. 1, 3 South 749. In the case last cited, there was a mere general objection to the evidence of the confessions, *specifying no ground*; and this court reversed the judgment, for error in overruling it, because there had been no proper predicate laid for the introduction of confessions. * * *" (Italics added.)

And from Stone, C. J., in the case of Amos v. State, 83 Ala. 1, 3 So. 749, where the objection was made *without assigning grounds,* we quote:

"* * * There was objection and exception, alike to the question and the answer. The record is silent as to what caused this confession, or called it out. Inducements or fear may have preceded the confession, and there is nothing in the record to show that they were not brought to bear upon him. It has been too long the rule of this court to be now disputed or questioned, that 'all confessions are *prima facie* involuntary and inadmissible, and they can be rendered admissible only by showing that they are voluntary and not constrained.'—Sampson v. State, 54 Ala. 241; Young v. State, 68 Ala. 569; 3 Brick. Dig. 285, § 552 et seq. * * *"

In Minirth v. State, 270 Ala. 228, 117 So. 2d 360, Mr. Justice Merrill has pointed out the possibility of an accomplice's using improper inducement. See also Busch and

Harwood, Confessions, 22 Ala. Lawyer 272 (July, 1961); Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242.

We are not permitted, under Rule 45, to weigh the record in the light of what a reasonable jury would (could or should) have done had the quoted testimony not come into evidence on the trial.

Accordingly, the judgment below is reversed and the cause remanded for a new trial.

Reversed and remanded.