239 So.2d 325

**Howard Luther DICKERSON**

v.

**STATE.**

**7 Div. 26.**

Court of Criminal Appeals of Alabama.

Sept. 15, 1970.

———◇———

Love & Love, Talladega, for appellant.

MacDonald .Gallion, Atty. Gen., and George W. Hodges, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

Murder second degree with sentence of twenty years.

The tendencies of the State's and defendant's evidence as to whether or not Dickerson mortally cut or stabbed Carl Vester Simpson were divergent at all substantial points.

I

The prosecution called Mary Dale Fry. This witness, the betrothed of the deceased, was asked by the District Attorney:

"Q    How long have you known Howard?

"A    Just when he got out of prison is all."

The transcript continues:

"MR LOVE: Now, if it please the Court at this time I move for a mistrial.

"THE COURT: I'll overrule the motion. I'll exclude that from the evidence and instruct the jury not to consider it in any manner in arriving at your verdict in this case.  Now, when I say something is excluded I mean you are to decide the case from the evidence which is left in the case and don't give any consideration to the last statement of the witness.

"MR LOVE: If it please the Court, as far as the record is concerned I want it further stated that in the matter of a preliminary hearing the very same matters were gone into and that I insist that this statement was deliberately made by this witness; that she knew better than to make the statement and that it was made solely for the purpose of prejudicing this case and it violates the Defendant's constitutional rights under the Third Amendment and also the Fifth Amendment and once again I ask for a mistrial.

"THE COURT: You have the same ruling and the same instructions to the jury."

Later, after the State rested, Dickerson took the stand in his own behalf.  On cross examination the District Attorney brought out that in 1965 Dickerson had been convicted in Calhoun County of three charges of second degree burglary and one of voluntary manslaughter.

We mention these convictions because the proof adduced by the State, if believed to a moral certainty by a reasonable jury, left Dickerson virtually only the choice of pleading guilty or testifying himself.[1]

The State had put him alone in a bedroom with Simpson alive.  No State witness saw Simpson come out uninjured.  Rather, Dickerson was seen fleeing the house and

1.  Taking the stand exposed his credibility because of conviction of turpitudinous crimes.  Code 1940, T. 7, §§ 434 and 435.

afterwards two State witnesses returned to the house and found Simpson bleeding and comatose.

In brief appellant's counsel has cited Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 and Barber v. United States, 129 U.S.App.D.C. 193, 392 F.2d 517, both from the D.C.Circuit Court of Appeals. *Gordon,* supra, is full exposition of Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763.

█ These cases, of which Luck is the progenitor, hold that 14 D.C.Code, § 305, which treats of the competency of convicts as witnesses is not mandatory. We, however, hold that Code 1940, T. 7, § 435 confers no discretion on the trial judge except as to remoteness.[2] See Lanier v. State, 43 Ala.App. 38, 179 So.2d 167.

█ This, however, has been a digression from analyzing whether or not prejudicial injury resulted from the trial judge's denying defendant's motion for a mistrial. In that respect, *Luck, Gordon* and *Barber,* supra, are beside the point.[3]

We consider that this incident is closely like that in Lee v. State, 265 Ala. 623, 93 So.2d 757, from which we quote in part:

"During the course of the direct examination of a prosecution witness, J. P. Lee, a brother of the defendant, the following transpired:

" 'Q. Well, had you and your brother had any trouble? A. No, sir. He meant to get me and Jack both.

" 'Mr. Roberts [one of defendant's counsel]. We ask the Court to exclude that.
" 'The Court. Yes, what he meant to do is out, that is not evidence, gentlemen, just disregard it.

" 'Mr. Roberts. Now we ask for a mistrial.

" 'The Court. No, I will overrule it.

" 'Mr. Roberts. We except.'

"The answer of the witness was not responsive to the question and the trial court acted correctly in admonishing the jury to disregard the answer, but we think the motion for mistrial was properly overruled."

Also, the remark here is not within the decided cases of ineradicable prejudice. In Drake v. State, 257 Ala. 205, 57 So.2d 817, we find:

"After Allen testified with respect to the confession, the solicitor asked if the defendant told him anything else, evidently pursuing the inquiry with respect to the confession. The irrelevant response by the witness that the defendant said he had served a term in the federal penitentiary was immediately excluded by the court, the court stating: 'I will exclude that. This has got nothing to do with the facts in this case.' Counsel for defendant moved for a mistrial, but this motion was overruled. Much stress is laid on this ruling as error to reverse, but we have concluded, after a consideration of all the facts, that the prompt ruling of the court in peremptorily and explicitly excluding the statement of the witness fully eradicated whatever prejudice might have attended its making. Stephens v. State, 252 Ala. 183, 40 So.2d 90. It is also to be borne in mind that after the defendant had taken the stand, it would have been proper for the State to have cross-examined him with reference to the verity of such a fact, although it would not have been competent at the time the witness volunteered the statement."

See Moore v. State, 44 Ala.App. 113, 203 So.2d 460.

2. It is self understood that he has the imperative duty of deciding as to a crime being turpitudinous vel non.

3. This view is reinforced because of the failure of the defense to ask that the jury be withdrawn to hold a voir dire hearing as to Dickerson's prior convictions.

We hold that there was no error in denying the motion for a mistrial.

### III

Dickerson, on the night of Simpson's death, had been arrested in Anniston due to a car collision which inferentially was contributed to by his drunken driving.

Later that night a deputy sheriff of Talladega County went to the Anniston City Jail to take him back to Talladega in connection with the killing of Simpson. The deputy went into the jail with city policemen to bring Dickerson out.

We quote in part from the Statement of Facts in appellant's brief:

"* * * He testified that he arrived at the jail and went upstairs with three other people to get the defendant, * * * that on the way downstairs the defendant asked, 'What's the Talladega police doing here?' * * * that nobody made any reply, nor did anybody tell him that he was under arrest and charged with murder. * * * defendant again asked, 'Why am I going to Talladega? Did I kill him?' and that none of the officers present made any reply * * *. The defendant kept talking and after they got in the car, this witness told the defendant that he didn't want to talk to him because he hadn't been informed of his Constitutional rights * * *. This witness further testified that the defendant asked twice at the top of the steps and going down the steps, 'Why am I going to Talladega? Did I kill him?' and none of us ever answered that question and we got down stairs and there were some women down there and he turned around and asked one of them was he dead and the woman replied 'Yes, Son, he's dead' and the defendant said 'Good, if the son of a bitch wasn't dead, I would kill him when I got out.' Where-upon counsel for the defendant asked at this time whether any officer in his presence had advised the defendant of any of his rights and the officer replied 'No, not in my presence.' * * * the defendant was already under arrest * * *. The witness further testified that no one in his presence told the defendant he was under arrest for murder * * *. At this point counsel for the defendant interposed an objection to this conversation on the basis that the defendant had not been advised of his Constitutional rights * * *."

Parenthetically we observe that the usual pre-*Miranda* (and still required) predicates as to voluntariness were established by the State. Rudolph v. State, 275 Ala. 115, 152 So.2d 662; Brown v. State, 42 Ala.App. 125, 154 So.2d 758.

■■ Also, the short span of time from Dickerson's original arrest until the two spontaneous questions serves to dispel any psychological stimulation from the officer's silence. Certainly Dickerson's rejoinder when the woman told him that Simpson was dead on the record before us is clearly voluntary.

Without a doubt Dickerson was in custody within the meaning of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694; Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311. However, he was the interrogator, not the interrogatee.

We hold that there was no error in admitting these statements.

We have reviewed the entire record under Code 1940, T. 15, § 389 and consider the judgment below is due to be

Affirmed.